## ADJUDGED IN THE

# SUPREME COURT OF JUDICATURE

### OF THE

## STATE OF NEW YORK,

IN OCTOBER TERM, IN THE YEAR 1800.

---

### TUNNO AND COX *against* LAGUE.

Where an *agent* receives a bill in order to obtain payment, he must send notice of non-acceptance and non-payment, with the protests to the remitter, whose duty it is to give immediate notice to the drawer.

If the *agent* himself undertakes to give notice to the drawer, it will be sufficient, if it be given as soon, as under the circumstances of the case, it could have been received from the holder.

The prevalence of a malignant fever in the city of New York, was held a sufficient excuse for not giving notice until November of a protest of non-payment made in September.

THIS was an action of *assumpsit*, against the defendant, as drawer of a bill of exchange, dated at Jeremie, April 29, 1798, on Malloby & Durand, of New York, in favor of the plaintiffs, for $4866 76, payable sixty days after sight. On the 11th of July, 1798, the bill was presented to the drawees, and protested for non-acceptance, and on the 12th September, it was protested for non-payment.

At the trial, R. Lenox, a witness, testified that he was an agent for the plaintiffs, who reside in South Carolina, and received the bill from them; that the defendant, after drawing the bill, came to New York, and the witness, on the first opportunity, gave him notice of the non-acceptance, which was shortly before the 8th August; that the witness afterwards removed with his family into the country, on account *of the yellow fever, which prevailed in the city, [*2]

VOL. II.                    1

Tunno and Cox v. Lague.

and in November, immediately after his return, gave notice of the non-payment to the defendant.

It appeared that the defendant was a married man, and had a house in New York ; that he went to St. Domingo on business, and returned to New York about the 1st of August, where he afterwards constantly and publicly resided.

A verdict was taken for the plaintiffs for the amount of the bill, with interest and damages, subject to the opinion of the court, on the point, whether due notice had been given to the drawer, of the non-acceptance and non-payment of the bill.

*Troup*, for the plaintiff.

*Harison*, for the defendant.

*Per Curiam.* The *holder* of a bill of exchange is bound to use due diligence to give notice of non-acceptance, as well as of non-payment, to the drawer or endorser whom he intends to charge. (5 Burr. 2670. 1 Term Rep. 714. Kyd, 76, 79.) Had Lenox been the real holder, he ought to have given notice of the non-acceptance to the drawer, before the 8th August, either at his dwelling house, or if his residence was not known, to have sent it to Jeremie, where the bill was drawn. The prevalence of the yellow fever would have been a sufficient excuse for a delay of notice of non-payment until November, as there was a stop to all business in the city.(a) But Lenox was an *agent* of the holder, and

(a) Any reasonable cause not attributable to the misconduct or negligence of the holder, will excuse delay in giving notice of dishonor and in presentment for acceptance or for payment, all of which cases are, in this respect, governed by the same general rules. Story on Bills, 258, 259, § 234. Id. 347, 351, § 308, 309. Id. 375, § 327. Inevitable accident is such a cause and excuses a delay as long as the circumstances compel, for *impossibilia nulla obligatio est ;* as, for example, the death of a correspondent to whom the bill has been sent for presentment, the death or illness of the holder or his agent, a sudden illness happening to a messenger ; (see Pothier de Change, pl. 144, and Pardessus Droit Comm. tom. 2, art. 426 ;) the prevalence of a malignant fever, (though it was otherwise decided in *Roosevelt* v. *Woodhull,* Anth. N. P. 35, 36, overruled by the principal case,) or a state of war between the country of the drawer and drawee, *Hopkirk* v. *Page,* 2 Brock. 20 ; and so where a bill drawn on Leghorn due the 10th September, 1800, was not demanded till the 31st December ; Leghorn being then occupied by the enemy,

his duty extended no farther than to give notice to his principal, of the non-acceptance and non-payment, and to transmit the requisite protests, in order that the holder might give notice to the drawer.(b)    As the drawer here had notice, be-

or in some such critical situation, and it was therefore impossible to present it in season. It was held, it being afterwards presented with due diligence and refused for want of presentation at the time when it was due, that the holder might recover against the antecedent parties, and evidence of the impossibility of presenting it at the time of the maturity of the bill might be given on the ordinary averment that it was duly presented. In this case, Lord Ellenborough observed, that " duly presented is presented according to the custom of merchants, which necessarily implies an exception in favor of those unavoidable accidents which must prevent the party from doing it within the regular time," and it was left to the jury to say whether from the situation of the country it was impossible for the plaintiff to present it in due time. *Patience* v. *Townley*, 2 Smith, 223. See also *Schofield* v. *Bayard*, 3 Wend. 488, per Savage, Ch. J. 491. And upon the same principle, any political event that interrupts the intercourse between different countries, or different parts of the same country ; the stoppage of the mail by ice or snow or freshets ; the detention of a vessel by contrary winds ; the loss of the bill by robbery ; (Story on Bills, 349, § 308 ;) is deemed a sufficient excuse ; (Chitty on Bills, ed. 1833, p. 360, 389, 422, 423, 485, 524 ;) but the party is held to perform his duty within a reasonable time after the circumstances will permit. (Chitty on Bills, ed. 1833, p. 422, 423.) *Hopkirk* v. *Page*, cited *supra*. *Patience* v. *Townley*, id. In *Price* v. *Young*, 1 M'Cord, 339, it was held that the death of the holder of a bill or note before it became due did not excuse the want of a due presentment for payment and due notice of dishonor, though no administration was taken out at the time. But it is questioned by Mr. Justice Story, (Story on Bills, 350, n.) whether this decision be consistent with the general principles of law on this subject. See also Chitty on Bills, ed. 1833, p. 360, 422, 485, 524.

(b) If an agent or banker be a nominal holder, though only for the purpose of collection, he is entitled to the same time to give notice of the dishonor as if he were himself the real holder. In short he is treated as such. (Story on Bills, 323, § 292. Chitty on Bills, ed. 1833, p. 521, 522. Bayley on Bills, ed. 1830, p. 272, 273. 3 Kent's Comm. 108.) *Farmers, &c. Bank* v. *Turner*, 2 Litt. 18. *Colt* v. *Noble*, 5 Mass. R. 67. See *Van Wart* v. *Smith*, 1 Wend. 219. *Sewell* v. *Russell*, 3 Wend. 276, 277. *Howard* v. *Ives*, 1 Hill, 263. *Haynes* v. *Birks*, 3 Bos. & Pul. 599. *Scott* v. *Lifford*, 9 East, 347. *Langdale* v. *Trimmer*, 15 id. 291. *Church* v. *Barlow*, 9 Pick. 547, 549. *U. S. Bank* v. *Goddard*, 5 Mason, 366. *Mead* v. *Engs*, 5 Cowen, 303. But if information of the dishonor of a bill be sent to an agent not a party to it, to be communicated to the drawer, &c. he must give notice thereof immediately ; and if he omits so to do till the next day the drawer is discharged. *Sewell* v. *Russell*, 3 Wend. 276. *United States* v. *Barker*, 12 Wheat. 559. S. C. 4

fore he could possibly have received it from the remitter of the bill, he cannot complain.

If the agent undertakes to give notice, it will be good, if it be given as early as it could have been received [*3] from *the holder. It would be too rigorous to require more of an agent in such a case. If the agent does not use due diligence in sending information to the holder of the non-acceptance or non-payment, the latter may, perhaps, suffer for the negligence of his agent. The plaintiffs are entitled to judgment.

Judgment for the plaintiffs.