[See Case No. 14,519.]

═══

# Case No. 14,520.

## UNITED STATES v. BARKER.

[4 Wash. C. C. 464.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1824. [2]

EVIDENCE—BILLS OF EXCHANGE—NOTICE OF PROTEST—WHEN AND HOW TO BE GIVEN—EXCUSE FOR NOT GIVING.

1. The letters of an agent to his principal, can not be read in evidence against a third person.

2. The holder of a protested bill of exchange is bound to give notice to the person he means to look to, by the earliest practicable post after the bill is dishonoured, when the parties do not live in the same town

[Cited in U. S. v. Bank of the Metropolis, 15 Pet. (40 U. S.) 393.]

3. The letter giving the notice should be put into the post office early enough to be sent by the mail of the succeeding day. This must be done by the agent in the first instance where the business is managed by an agent, and the same diligence is required of the payee.

[Cited in Lawson v. Farmers' Bank, 1 Ohio St. 214. Cited in brief in Renshaw v. Triplett, 23 Mo. 218.]

4. If the notice is to be sent across the sea, it should be by the first regular conveyance. Quære, in time of war between the country of the drawer and drawee, what is the rule as to sending notice by the agent of the payee to the drawer.

5. When a bill must be presented for acceptance, and even if it be not necessary to present it, yet it is presented and dishonoured; notice of the refusal to accept, or of the protest for non-acceptance, must be given without waiting the maturity of the bill.

6. What constitutes negligence generally, is not giving notice: and particularly where the United States are the holders of the bill.

[Cited in U. S. v. Nashville, C. & St. L. R. Co., 118 U. S. 122, 6 Sup. Ct. 1008.]

[Cited in Reeside v. Knox, 2 Whart. (Pa.) 234.]

7. If the holder has any legal excuse for not having given notice, according to the strict rules of law, it lies on him to prove it. He cannot excuse himself by supposed obstacles.

8. Legal notice is given to the party in person, only by leaving a written notice at his place of residence; and this must be proved by him who asserts it.

The jury were sworn to try four actions, on four different bills of exchange, drawn in New York, on Liverpool and London, by Jacob Barker, indorsed by the defendant's intestate, [A. Barker,] and purchased in New York by the treasurer of the United States for the use of the United States. Two of the bills were dated the 30th of July, 1814, one for £8,046. 6s. 5d. sterling, and the other for £10,000 sterling. They were protested for non-acceptance on the 25th of November in the same year, and for non-payment on the 27th of January, 1815. The first notice which the government had of their dishonour, was received on the 7th of May, 1815, by a letter from the Messrs. Baring, the agents of the United States, dated the 9th of December, 1814, covering the protests for non-payment. On the 8th of May, 1815, a letter was written by the secretary of the treasury to Mr. Flewellin in New York, covering the protests for non-payment, and directing him to employ a notary to give notice of the protest to the drawer and indorsers. The other two bills, one for £4,139. 13s. 5d. sterling, and the other for £3,000 sterling, bear date the 24th of June and 2d of July, 1814, and were protested for non-acceptance on the 3d of October, and for non-payment on the 7th of December in the same year. On the 7th of December, 1814, a letter was written by the secretary of the treasury to the same gentleman, Mr. Flewellin, in New York, covering the protests for non-acceptance, and directing him to employ a notary to give notice of the protests to the drawer and indorsers. It was proved by the deposition of Flewellin, that he received the above communications and protests in the months of December, 1814, and May, 1815, respectively, but that he could not recollect the precise days on which they were received; that he is confident he delivered the protests to the notary, Mr. Bleeker, within an hour after the letters were received, and gave directions to notify the drawer and indorser immediately of the dishonour of the bills. It was further proved, that the mail, which left Washington on the 7th of December, 1814, would, according to the regular course, arrive in New York between nine and ten on the morning of the third day afterwards, that is to say, on the 9th, and that the mail of the 8th of May, would arrive between the same hours on the 10th. The letters from Messrs. Baring to the government, respecting these bills and protests, were offered to be read by the district attorney, which was objected to by the counsel for the defendant.

C. J. Ingersoll, for plaintiffs.

Mr. Hopkins, Mr. Binney, and J. Sergeant, for defendant.

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

[2] [Affirmed in 2 Wheat. (15 U. S.) 395.]

WASHINGTON, Circuit Justice. The letters of the agent of the United States, cannot be given in evidence against a third person. His deposition might have been taken.

The district attorney, having proved the death of Bleeker the notary, offered in evidence a paper found in his desk after his death, by a clerk of his, in whose custody the papers had been since his death, in which entries were made in the hand writing of the deceased in relation to these bills and some others, to the following effect, viz: "Notified A. Barker, that Jacob Barker's bill for £10,000 sterling, drawn on Thomas R. Hazard & Co., indorsed by him, had been dishonoured and returned protested for non-payment, and that the holders look to him for payment." A similar entry is made as to the other bill for £8,046. 6s. 5d. sterling, and on the margin, opposite to each entry, are the figures "12th of May, 1815." Similar entries are made as to the two other bills, except that the protest is stated to be for non-acceptance, and the figures opposite to them in the margin are "12th December, 1814." The competency of the evidence was asserted upon the authority of Nichols v. Webb, 8 Wheat. [21 U. S.] 326. It was denied that the above case sanctioned the admission of this evidence, since that proceeded upon the fact proved by a witness, the daughter of the notary, that he was in the regular habit of giving notices of protests of bills of exchange and notes, of which he kept a regular record, from which the copy of the entry in question was taken. That does not appear to have been the habit of Mr. Bleeker. On the contrary, it is proved by a witness that no entries of notices of protests of foreign bills are to be found on his books. The counsel cited also 2 Strange, 1129; 4 Camp. 192.

It was at length agreed by the counsel, that for the purpose of obtaining the opinion of the court upon the merits of the causes, and of presenting to the revision of the supreme court all the questions involved in them, the paper should be read, with liberty to either party, against whom the court should hereafter decide as to the competency of the evidence, to take a bill of exceptions, in like manner as if the opinion were now delivered.

For the defendant, it was insisted, that the United States could not recover, on the ground of laches in the following particulars: (1) In their English agents, in not forwarding notice to the government, of the dishonour of these bills by the first ship. The protests of the two smaller bills for non-acceptance were made on the 3d of October, and from the date of the letter from the secretary to Flewellin inclosing them, they either were not received by the government until about the 7th of December, or if received earlier the giving of the notice was delayed by the government, in either of which cases, the plaintiffs cannot recover. It lies upon them to prove that due diligence was used. (2) The two large bills were protested for non-acceptance on the 25th and 28th of November, 1814, and yet notice thereof was not received at the treasury department until the 7th of May, 1815. And even then notice of those protests was not given to Flewellin, the agent in New York, but only notice of the protests for non-payment. (3) No notice of the protests for non-acceptance of these large bills was given to the indorser at any time. All the decisions in England and in this country, except in Pennsylvania, show that the omission to give notice of the protest for non-acceptance by the first practicable mail, or, if beyond sea, by the first regular ship, is fatal to the recovery by the holder. Chit. 256; 2 Camp. 459; 5 Burrows, 2670; 4 Mass. 341; 7 Mass. 449; 1 Bay, 177; 11 Johns. 187; 3 Johns. 204; 2 Johns. Cas. 1. The only case which has decided otherwise is Read v. Adams, 6 Serg. & R. 356. But it is the law merchant of New York which must govern these cases. (4) Admitting the copy of the memorandum of Bleeker as competent to prove when the notices were given in New York, they were too late on the 12th of December and the 12th of May, as the date of the secretary's letter covering the protests of the two smaller bills proves that he was informed of their dishonour on the 7th of that month, and it is proved that the government had notice of the dishonour of the two larger bills as early as the 7th of May, 1815, and yet notice to the indorser, even of the protest for non-payment, was not given till the twelfth, whereas it ought to have been on the ninth, or at farthest on the tenth. Cases cited to establish the general principles above laid down: 1 Starkie. 310; Chit. 400, 402, 285, 287; 20 Johns. 382, 383; U. S. v. Barker [Case No. 14.519]; ·Elford v. Teed, 1 Maule & S. 28; Tindal v. Brown, 1 Term R. 167; Peake, N. P. 186; 6 East. 3; Lenox v. Roberts, 2 Wheat. [15 U. S. 373]; 3 Bos. & P. 601; 2 Phil. Ev. 35. Lastly, the memorandum made by Bleeker, though it should be evidence that the indorser was notified, does not prove, with sufficient certainty, that he was notified on the 12th, or that he was legally notified; which, as he lived in New York, could only be by personal notice, or by leaving a written notice at his place of abode.

The authority of the cases cited by the defendant's counsel was not denied by the district attorney; but he submitted to the court, whether those rules of law which affect the obligation of contracts in transactions between man and man, on the ground of negligence by the party claiming their fulfilment, are applicable to the government of the United States? He denied that the charges of negligence were made out. As to the want of due diligence imputed to the agents of the United States in England, it

is a sufficient answer that, for some time after these bills were protested, war was raging between Great Britain and the United States, and consequently there could not exist any regular communication between the two nations. And in respect to the alleged negligence at Washington, it ought at least to be proved in a case of the United States, and is not to be presumed. The secretary of the treasury, in conducting a transaction like the present, is placed in a different situation from private persons. He is governed by certain forms, from which individuals are exempt. He does business only during office hours, when his clerks are about him to register his acts. All this requires time, and it would be the application of a reasonable qualification of the general rules, in regard to notice, to lay it down that in these cases they were in time. As to the argument that notice of the protest for non-acceptance must be given, he relied upon the cases of Read v. Adams, 6 Serg. & R. 356; Brown v. Barry, 3 Dall. [3 U. S.] 365; Clark v. Russel. Id. 415.

WASHINGTON, Circuit Justice, after stating the case as above [charged the jury]: The contract which the drawer and endorser of a bill of exchange enter into is of a qualified character. They agree to pay the bill, in case it should be dishonoured, provided due diligence is used by the holder, or by his agent, in presenting the bill for acceptance and payment. where presentation for acceptance is necessary; and, in case the bill be dishonoured, in giving notice of that fact to the person he looks to for payment. This notice must be given by the earliest practicable post. after the bill is dishonoured, where the parties do not live in the same town; that is to say, the letter giving the notice, (for it may be sent by a private conveyance. provided no time is lost thereby), should be put into the office early enough to be sent by the mail of the succeeding day. This must be done by the agent in the first instance. where an agent is employed to manage the business. and the same diligence is required of the holder, after he receives notice from the agent that the bill is dishonoured. This strictness may be dispensed with under particular circumstances; but then the existence of those circumstances must be proved by the plaintiff. If the want of due diligence be imputable to the agent. the principal must suffer the consequence of it. as much so as if he himself had been in default. If the notice is to be sent across sea, it ought to be sent by the first regular conveyance.

But here a question arises, which has never been decided that we know of. and which we think is attended with considerable difficulty. Can it be said legally, or in point of fact affirmed. that there is a regular conveyance, or any conveyance at all which the law will notice. between two countries at war with each other? If not, is it necessary for the holder to prove that the notice was sent by the first vessel that sailed with his knowledge. or with that of his agent? For the purpose of spreading this question on the record, and for no other reason, we shall instruct you that such proof ought to be given by the plaintiffs. The law merchant, as settled by judicial decisions in England, and in New York, requires that, in all cases of bills which must be presented for acceptance, due notice of the protest, in case acceptance is refused, must be given, without waiting for the maturity of the bill, and a demand of payment; such too is the rule in Massachusetts and South Carolina. And the rule is the same in England, even in cases of bills which need not be presented for acceptance, if in fact they be presented, and acceptance be refused. It is supposed that the cases of Brown v. Barry, 3 Dall. [3 U. S.] 365, and Clark v. Russel, Id. 415, have established a different rule as the law merchant of the United States. We do not so understand those cases. In both of them, the action was brought upon the protest for non-payment, and the objection was, that the plaintiff could not recover without showing a protest for non-acceptance. The supreme court merely decided that the custom of merchants in the United States does not ordinarily require, to recover on a protest for non-payment of a bill, that a protest for non-acceptance should be produced, though the bills were not accepted. Thus deciding, in effect, either that a protest for non-acceptance need not be made of a bill payable after sight, any more than of one payable after date; or that such protest need not be given in evidence, where the declaration is upon a protest for non-payment. Whether these decisions would now be upheld by the same court may at least be questioned. Few reports of the decisions of the state courts were published when those cases came before the supreme court of the United States, and the law merchant respecting bills was certainly not as well understood, and the custom. as established in this country, as well known as at the present day. It would not do to speak of the custom in the United States now as the court then spoke. in the face of so many cases decided in the most commercial cities of the United States. Be this as it may, the necessity of giving due notice of the dishonour of a bill which has been refused acceptance, is not, in our opinion. dispensed with in those cases. That question did not arise in the courts below, and was not presented to the view of the supreme court. We think it safest therefore to follow the course of decisions in England upon this point, and particularly those of New York, where the bills were drawn, and where the drawer and indorsers resided.

But even if notice of the non-acceptance of the two large bills had been given, as it was of the two smaller ones, we should be of

opinion that it was too late. On the 7th of May, the secretary had notice of their dishonour, and on the next day he addressed a letter to the agent of the United States in New York, enclosed the protests for nonpayment, and directed notice to be given to the drawer and indorsers. Had the holder been a private individual the letter giving the notice ought to have been put into the post office, so as to have gone in the mail of the next day. Admit that, regarding the office hours of business of the public departments, the same strictness ought not to be required of the United States, still the letter of the 8th ought to have gone in the mail of the 9th, in which case it would have arrived in New York about half past nine in the morning of the 11th, on which day the notice ought to have been given. As to the other two bills, the letter to the agent in New York was written on the 7th of December, and consequently might have been put into the office so as to have been mailed on the 8th, in which case it would have arrived in New York on the morning of the 10th. One thing is clear upon the evidence now before you. Either the letters were not put into the office at Washington in due time, or the agent in New York was guilty of inexcusable negligence in giving the notices; and in either case the United States cannot recover. If any circumstance occurred, at either end of the line, to excuse this apparent negligence, it was the business of the plaintiffs to prove it; none such can or ought to be presumed by the jury.

As to the paper containing memoranda found in Bleeker's desk, after his death, the competency of which, as evidence, is hereafter to be decided; the question which it gives rise to is, not whether notice of the dishonour of these bills was given to the indorser, but whether it was given in a legal manner? If, as is proved and agreed on both sides, the indorser lived in the city of New York, the service of legal notice would have been on his person, or by leaving a written notice at his place of residence. But does this memorandum state that it was given in either of those ways? It may have been given by putting a letter into the post office, which would not have been sufficient; or a written notice might have been put into the hands of some third person to deliver to the indorser, or to leave at his house, who neglected to do either. You ought to be satisfied that the party was notified in the mode the law merchant requires.

Upon the whole, we are of opinion that due notice of the dishonour of these bills was not given, and that the plaintiffs are not entitled to verdicts.

Verdict for defendant.

The charge of the court in this case being excepted to, the case was taken by writ of error to the supreme court, and, in February, 1827, affirmed. [2 Wheat. (15 U. S.) 395.]