MICHAEL MUSSON AND GEORGE O. HALL, SURVIVING PARTNERS OF WILLIAM NOLL, PLAINTIFFS, *v.* WILLIAM A. LAKE.

By the law merchant, when a demand of payment is made upon the drawee of a foreign bill of exchange, the bill itself must be exhibited.

Neither the statutes of Louisiana, nor the decisions of the courts of that State, have changed the law in this respect.

The statutes and decisions examined.

If, therefore, the notarial protest does not set forth the fact that the bill was presented to the drawee, it cannot be read in evidence to the jury.

Even if the laws of Louisiana, where the drawee resided, had made this change in the law merchant, it would not affect the contract in the present case, which is a suit against an indorser residing in Mississippi, where the contract between him and all subsequent indorsees was made, and where the law merchant has not been changed.

THIS case came up, on a certificate of division in opinion, from

*Musson et al. v. Lake.*

the Circuit Court of the United States for the Southern District of Mississippi.

The question which was certified to this court will be found at the conclusion of the following statement.

Lake was sued as indorser of the following bill of exchange : —

*Vicksburg, 17th December, 1836.*

Exchange for $ 6,133 $\frac{00}{000}$.

Twelve months after first day of February, 1837, of this first of exchange (second of the same tenor and date unpaid), pay to the order of R. H. & J. H. Crump six thousand one hundred and thirty-three dollars, value received, and charge the same to account of STEELE, JENKINS, & Co.

To KIRKMAN, ROSSER, & Co.,
New Orleans.

Indorsed :                                      R. H. & J. H. CRUMP,
                                                          W. A. LAKE.

Kirkman, Rosser, & Co., New Orleans, 3d February, 1838, — protested for non-payment.     A. MAZUREAU, *Not. Pub.*

It being admitted, that Vicksburg, where said bill bore date, was in the State of Mississippi, and New Orleans in the State of Louisiana, the plaintiffs then offered to read in evidence to the jury, the protest of said bill of exchange ; which protest, thus offered to be read, is in the words and figures following, to wit : —

UNITED STATES OF AMERICA, *State of Louisiana* : —

By this public instrument, protest, be it known, that on this third day of February, in the year one thousand eight hundred and thirty-eight, at the request of the Union Bank of Louisiana, holder of the original draft, whereof a true copy is on the reverse hereof written, I, Adolphe Mazureau, a notary public in and for the city and parish of New Orleans, State of Louisiana aforesaid, duly commissioned and sworn, demanded payment of said draft, at the counting-house of the acceptors thereof, and was answered by Mr. Kirkman that the same could not be paid.

Whereupon I, the said notary, at the request aforesaid, did protest, and by these presents do publicly and solemnly protest, as well against the drawer or maker of the said draft, as against all others whom it doth or may concern, for all exchange, re-exchange, damages, costs, charges, and interests, suffered or to be suffered for want of payment the said draft.

Thus done and protested, in the presence of John Cragg and Henry Frain, witnesses.

In testimony whereof, I grant these presents under my sig-

[L. S.]  nature, and the impress of my seal of office, at the city of New Orleans, on the day and year first herein written.
A. MAZUREAU, *Notary Public*.

The copy of the said bill of exchange, referred to in said protest, on the reverse side thereof written, is in the words and figures following, to wit : —

*Vicksburg*, 17*th December*, 1836.

Exchange for $ 6,133 $\frac{00}{000}$.

Twelve months after the first day of February, 1837, of this first of exchange (second of same tenor and date unpaid), pay to the order of R. H. & J. H. Crump six thousand one hundred and thirty-three dollars, value received, and charge the same to account of.                    STEELE, JENKINS, & Co.

To KIRKMAN, ROSSER, & Co.,
            *New Orleans*.

Indorsed :                        R. H. & J. H. CRUMP,
                                W. A. LAKE.

WM. NOLL & Co., in liquidation.

But the defendant objected to said protest, and the copy of the bill on the reverse side thereof written being read in evidence to the jury, on the ground that it was not stated in said protest that the notary presented said bill of exchange to the acceptors, or either of them, or had it in his possession when he demanded payment of the same.

And that for this alleged defect, which it was insisted could not be supplied by other proof, the said protest was invalid and void upon its face, and could not be received as evidence of a legal presentment of the bill for payment, or of the dishonor of the bill. And, thereupon, on the question whether the said protest could be read to the jury, as evidence of a legal presentment of the bill for payment, or of the dishonor of said bill, the judges were opposed in opinion. Which is ordered to be certified to the Supreme Court of the United States for their decision.

J. McKINLEY. [L. S.]
J. GHOLSON. [L. S.]

The cause was argued by *Mr. Barton*, for the plaintiffs, and *Mr. Mason* (Attorney-General), for the defendant.

*Mr. Barton*, for plaintiffs.

. On the trial of this cause, and after the original bill of exchange, upon which the suit was brought, had been read to the jury, the plaintiff offered in evidence the protest thereof, and the following is a copy of the material parts thereof, to wit : —

" UNITED STATES OF AMERICA, *State of Louisiana:* —

" By this public instrument of protest, be it known, that on this 3d day of February, 1838, at the request of the Union Bank of Louisiana, holder of the original draft, whereof a true copy is on the reverse hereof written, I, Adolphe Mazureau, a notary public in and for the city of New Orleans, State of Louisiana aforesaid, duly commissioned and sworn, *demanded payment of said draft* at the counting-house of the acceptors thereof, and was answered by Mr. Kirkman (one of the firm), that the same could not be paid."

The counsel of the parties to this suit do not differ at all as to the duty of a notary, when making a personal demand of the payment of negotiable paper prior to the protest thereof. We concur in opinion, that he must have the note or bill with him, and should present it for payment, &c.; and the only difference which arises is, as to the species of evidence which is indispensable to prove the fact of presentment. Must the term itself be used in the protest, and will no form of words therein supply its place? This is the position assumed for the defendant; and, this being controverted, the issue is made which is now to be disposed of.

A number of authorities have been cited by the learned counsel for the defendant, which, though certainly applicable to the duties to be performed by a notary *ante* protest, are believed not to decide the question raised here; nor, if they did, can it be conceded that they would be conclusive, upon a matter specially pertaining to Louisiana's jurisprudence.

The stress of the argument in the learned counsel's brief is, that in all cases the fact of presentment must appear, *in verbo*, upon the face of the protest; and this is assuredly not so. For example: if a note or bill should be payable at a particular place, and the notary takes it thither at maturity, and there should be no one there to whom to present it, or of whom to demand payment, the law dispenses the party with making either, and the notary, of course, from certifying either, for *nullus cogitur ad vana.* So in the case of a lost note; a valid protest could be made thereof without its production, if an adequate indemnity was tendered to protect the party from all future liability, or to reimburse him for any payments he should be constrained to make. In these and analogous cases, it could hardly be insisted, either that the law required the notary to certify to a presentment which was never made, and the failure whereof the law excuses; or, that the protest would be invalid without it. One of the most important of the cases cited adversely is a strong authority to establish this. It is the case of Freeman et al. *v.* Boynton, 7 Mass. R. 483. The court there, after affirming the necessity of having the note or bill present when the demand is made, says: —

" This rule may admit of exceptions, — as where the security may be lost; in which case a tender of sufficient indemnity would

make the demand valid, without producing the security. And where, from the usual course of business, of which the parties are conversant, the security may be lodged in some bank, whose officers shall demand payment, and give notice to the indorser, according to the custom of such banks, — *the security not being presented at the time of the demand, but the parties being presumed to know where it may be found.*" Here, again, presentments are dispensed with, in cases where protests are authorized ; and surely these protests must dispense with averments which would not be true.

The forms of protest vary in different countries. They vary in different States. They vary in the same State. They must necessarily adapt themselves to the true circumstances attendant upon the dishonor of bills and notes. .

The acts of public officers are favored to the extent that they are presumed to know their duty, and to do their duty, unless the contrary appears. A notary has no right " to demand payment," in the absence of the security which attests the party's liability, or without its presentment ; and of course he is presumed to know that he cannot do it. Where, then, notaries " demand payment," they have a right to the presumption that the demand followed the presentation. A contrary doctrine casts the presumption against the officer, and arraigns him, by implication, for a breach of duty ; and that, too, in the absence of an interest or a motive. Hence, therefore, a " demand of payment," in the absence of other words, far from implying an actual presentment, would imply that there was none. It is believed that no principle, nor usage, nor even precedent, gives the sanction of its authority to accusatory implications like these.

If the protest had averred, that " payment was duly demanded," surely that would have implied that the demand was made upon presentment ; and if so, is it to be implied that the demand alleged in this protest was otherwise than duly made ? If a protest states the substance of what is required to be done, it is all that is needed. No form of words is sacramental ; protests have been holden good, though they stated that the demand was made " at the maturity " of the bill or note ; or " at the time they were due," in lieu of the usual mode of stating the precise day, month, and year when the demand was made. So, notaries must make their demand within certain hours of the days when the bills or notes mature. Demands made in unseasonable hours would be of no avail. Nevertheless, protests but rarely enter into such details, but the thing itself — the presentation — is as much required to be made within the prescribed hours, as it is required to be made at all. Why, then, is more speciality of statement needed about the exact performance of one duty than the other ? Why, if the demand of payment implies that it was made in due time, may it not imply that it was made after due presentation ?

But the protest *ad hoc* was made in Louisiana. If good there, it must be good elsewhere. Commercial usages, however ancient, however prevalent, and however reasonable, cannot confront her statutes and annul them, nor reverse her courts' judgments which settle their meaning. Most disastrous would be the results were it otherwise ; for notarial offices in the large cities have their printed forms of protests, which they use in all cases in like conjunctures, and which have been in use for years, and are in daily use ; and in heavy business offices (like that of Mazureau's), there are sometimes from twenty to a hundred protests made in a single day, in behalf of the banks ; and hence there are vast and incalculable interests dependent upon the validity of these protests, and it would be an intolerable grievance to dealers in commercial paper, if, while these protests bound indorsers in Louisiana, they released them elsewhere.

A rapid synopsis of the statute and decisions of the Supreme Court of Louisiana will settle the law of protests specially applicable to the case at bar.

The act of the Louisiana General Assembly, of March 13th, 1827, section 1, provides : — " That all notaries, or persons acting as such, are authorized in their protests of bills of exchange, promissory notes, or orders for the payment of money, to make mention " (not of the presentment, but) " of the demand made upon the drawer, acceptor, or person, on whom such order or bill of exchange is drawn or given ; and of the manner and circumstances " (not of such presentment, but) " of such demand ; and whenever they shall have so done, a certified copy of such protest, &c., shall be evidence of all the matters therein stated."

In the case of the Louisiana Ins. Co. *v.* Shaumburg, 2 Mar., N. S., 511, it was decided that a notary's certificate of demand of payment and protest may be contradicted by other evidence. If it might, evidence might be marshalled to rebut that contradiction, and even supply, by parol, omissions excepted to ; and if this were so, the objection to the protest at bar should not have been to its admissibility, but to its effect, &c. And this would accord with the decision of Allain *v.* Whittaker et al., 5 N. S. 513, which declares that " the uniform practice in this State has been to receive the protests of notaries as evidence of the demand on the maker of a note or acceptor of a bill of exchange."

In the case of Gale *v.* Kemper's Heirs, 10 Louisiana Rep. 208, the court says, — " The note was made payable at the office of discount and deposit of the Bank of the United States, in the city of New Orleans, and the protest states, that " (not the presentation, &c., but) " the demand was made there of the proper officer. When a note is payable at a particular place, a personal demand on the drawer or maker cannot be made, and is not always required. It suffices to have been made of any persons there."

In the case of Thatcher *v.* Goff, 13 Louisiana Rep. 363, the court gave a striking instance of its liberality of interpretation when construing the language of protests. It decided that, where certain notes, payable at the Branch of the United States Bank at Natchez, are protested by a notary residing in Natchez, who states in his protest that he demanded payment at the United States Bank, it will be considered as meaning the Branch at Natchez, and not the principal Bank of Philadelphia ; thus supplying, by intendment, the important words, " Bank at Natchez," which the notary had omitted in his protest.

The learned counsel has cited the case of Warren *v.* Briscoe, 12 Louisiana Rep. 472 ; but it is believed to be clearly distinguishable from the case at bar. There the note was " payable at the Planters' Bank of Mississippi at Natchez," and the protest stated that " he went to the Planters' Bank, Natchez, and was informed by the teller, there were no funds in the bank for the payment of said note ; wherefore he protested," &c. Not only is no presentment stated, but there are no words from which it is to be implied, for no demand is stated to have been made ; and though it be inferable that there was some note of the party which the bank had no funds to take up, yet *non constat* that it was the note in question, unless the same had been exhibited to the teller. But this case was fully reviewed in the next case to be cited, which it is respectfully suggested is decisive of the validity of the protest in question.

The case referred to is that of Nott's Executor *v.* Beard, 16 Louisiana Rep. 308. The protest passed upon was from the identical notarial office which made the one in the case at bar. It is couched in the like language, thus : — " I demanded payment of said draft at the counting-house of the acceptors thereof, and was answered by Mr. Burnett, one of said firm, that the same could not be paid." It is to every extent the very case at bar ; it decides emphatically, that, under the laws of Louisiana, the word *presentment* is unnecessary in notarial protests ; that the word *demand* implies the presentment, and is all-sufficient.

*Mr. Mason* (Attorney-General), for the defendant.

This is an action brought by the plaintiffs against the defendant, as indorser of a foreign bill of exchange. The question raised in the Circuit Court, and upon which the judges divided in opinion, was whether the protest offered in evidence showed upon its face that a presentment to the drawees of the bill, and a demand of payment, had been made. The protest does not state that the bill was presented to the drawees and payment demanded, but simply that the notary demanded payment of the bill, without alleging that he presented it, or that he had it with him and exhibited it at the time he made the demand. We maintain that, by the settled principles of the commercial law, the protest of a foreign bill must

Musson et al. v. Lake.

show, that at the time the notary demanded payment he had the bill with him, ready to deliver in case it should be paid; this is generally done by stating that he presented or exhibited the bill. It does not necessarily follow, from a mere statement that he demanded payment of the bill, that he had the bill with him, and presented it or exhibited it to the drawees or acceptor, because he could demand payment of the bill without actually having it with him. To present a bill for payment is to exhibit or show the bill itself to the drawer or acceptor; to demand payment of a bill is to request its payment; and this request may be made whether the bill be present or not. A presentment *ex vi termini* imports that the bill itself was shown to the acceptor. A mere demand of payment does not necessarily import that the bill was shown and exhibited to the acceptor at the time the demand was made.

It is essential, to constitute a legal demand of payment of a bill or note, that it should be presented to the acceptor at the time the demand is made, or, in other words, that the person who makes the demand should have the bill with him. In Hansard v. Robinson, 7 Barn. & Cressw. 90, 14 Eng. Com. Law Rep. 20, the Court of the King's Bench decided that the holder of a bill of exchange cannot insist on payment without producing and offering to deliver up the bill. The same principle is asserted in Freeman v. Boynton, 7 Mass. Rep. 483, and other authorities. Vide Chitty on Bills, edit. of 1836, 385, *et seq.*; 12 Louisiana Rep. 473.

The contract of an indorser is conditional; he promises that the bill shall be paid if it is duly presented for payment, or if not paid upon presentment, and notice of its non-payment be given to him, that he will pay it. These constitute conditions precedent to a right of recovery against him. Chitty on Bills, edit. of 1836, 385. And being conditions precedent, the proof must be clear and explicit to charge him. 20 Johns. Rep. 381. In the last case, the Supreme Court of New York say : — " The question is not what inference the jury might draw from the evidence, but what testimony does the law require in such case. We have seen that this is a condition precedent, and strict proof is required. The law has allowed the indorser this protection; nothing short of clear proof of notice shall subject him to liability. The reason and justice of requiring clear proof against a surety will not be doubted. It is imposing no hardship on the party," &c. In that case, the proof was, that notice was left at the office of the defendant, or at the post-office. In the one case the notice would have been sufficient, in the other it would not; and as the proof did not affirmatively and clearly show that it was left at the office of the defendant, it was held insufficient. So here, if the bill was present, and shown to the acceptor when the demand was made, it was sufficient to charge the indorser; if it were not present, and ready to be delivered up when payment of it was demanded, it was not sufficient;

w*

and as the evidence (that is, the protest) does not show it was presented or exhibited when the demand was made, it necessarily follows that the proof was insufficient to charge the indorser ; because, as before shown, the statement in the protest, that he demanded payment of the bill, does not of itself import *ex vi termini* that he had the bill with him when such demand was made. The refusal to pay in this case, when payment was demanded, may have been predicated upon the fact, that the notary did not have the bill. Every fact stated by the notary in this protest may be true, and yet no dishonor of the bill have occurred on which to charge the indorser. The protest must show every act to have been done that is necessary to charge the indorser, and can leave nothing to inference or intendment. If every fact stated in this protest might be true, and the bill itself never have been exhibited or shown for payment, the proof is insufficient.

In suits against indorsers of foreign bills of exchange, the only legal evidence to prove the presentment of the bill and demand of payment is the protest. In regard to the drawer, if he had no funds in the hands of the drawee no protest is necessary, and an explicit promise to pay by an indorser may waive the necessity of a protest ; but without such express waiver, a protest is the only evidence of presentment and demand known to the law. " Whenever," says the law (Chitty on Bills, edit. of 1836, 489 *et seq.*), " notice of non-payment of a foreign bill is necessary, a protest must also be made, which, though on first view it might be considered mere matter of form, is, by the custom of merchants, indispensably necessary, and cannot be supplied by witnesses or the oath of the party, or in any other way ; and it is said is part of the constitution of a foreign bill of exchange, because it is the solemn declaration of a notary, who is a public officer recognized in all parts of Europe, that a due presentment and dishonor has taken place, and all countries give credence to his certificate of the facts stated." To the same point are the following cases : — 10 Mass. R. 1 ; 12 Pick. 484 ; 4 Har. & Johns. 54, 61 ; 4 Wash. C. C. R. 468.

To make the protest evidence of presentment and dishonor, it must then show on its face the solemn declaration of the notary, that a due presentment of the bill and its dishonor has taken place, and to constitute such due presentment and dishonor, it has been shown that a presentation or exhibition of the bill itself to the acceptor, and a demand of payment, is necessary. And to establish a legal presentment, the bill must accompany the demand. The evidence must affirmatively show that fact, and as the protest in case of a foreign bill is the only evidence admissible to prove it, it must show that the bill accompanied the demand, by stating that it was presented, &c., or other equivalent words. This is expressly stated by Mr. Chitty (Chitty on Bills, edit. of 1836, 492). He

Musson et al. *v.* Lake.

says, — " When the drawee, &c., refuses to pay the bill, the holder should cause it to be protested. For this purpose, he should carry the bill to a notary, who is to present it again to the drawee and demand payment," &c. If the drawee again refuse to pay, the notary is thereupon to make a minute, &c. The next step is to draw up the protest, which is a formal declaration, on production of the bill itself, &c., " that it has been presented for payment and payment refused," &c.

In countries governed by the commercial law, the form of the protest shows that the bill itself must be stated to have been presented in the protest, as well as the demand of payment. The form runs thus : — " On this day, the 1st, &c., at the request of A. B., bearer of the original bill of exchange, whereof a true copy is on the other side written, I, B. C., notary, &c., did exhibit the said bill," &c., &c. The demand of payment and refusal is then stated, *vide* form. Chitty on Bills, edit. of 1836, 496, 497.

If it be necessary to exhibit the bill at the time payment of it is demanded, it would seem necessary to prove it ; and if it be necessary to prove it, the protest, which is the instrument of proof, must not only show a demand of payment, but a presentation of the bill itself at the time the demand was made. And in conformity with these principles, the Supreme Court of Louisiana held, in the case of Warren *v.* Briscoe, 12 Louisiana Rep. 472, the protest must show that the bill itself was presented, &c.

This case, it is true, has in effect been overruled by the case of Nott's Executor *v.* Beard, 16 Louisiana R. 308, although the court endeavoured to reconcile the two cases. The last case, it is submitted, is irreconcilable with the principle and the adjudicated cases hereinbefore cited. It substitutes inference or presumption for fact, and decides the point mainly on the ground that the notary is a public officer, and must be presumed to have done his duty. It introduces a new rule, unknown to the commercial law, and substitutes inference of a fact, the existence of which the law required should be shown by express proof ; and, moreover, it assumes to raise the presumption from the statement of a fact (to wit, demand), which by no means necessarily imports that the bill was presented when such demand was made. The case is, as we will endeavour to show, inconsistent not only with the previous case in the same court in 12 Louisiana Rep., but with principle.

The court (p. 312) admit the law to be, that the person making the demand must have the bill with him ; but, say they, " It does not follow as a consequence, because both words are not used in the protest, that he had not the bill with him." By " both words," we understand the court to mean the words " presentment" and " demand," as used in the previous part of the sentence, in which they say, — " The person making the ' presentment' or ' demand' must have the bill with him." With all due

deference to the opinion of that court, for whom we entertain the highest respect, the question was not whether it followed as a consequence, because both words were not used, that the notary had not the bill with him, but whether it followed as a consequence, from the statement of the one used, to wit, "demand," that he had the bill with him. The law required the plaintiff to prove that he presented the bill and demanded its payment, which was refused. It does not follow, that, because he demanded payment of a bill, therefore he had the bill itself with him and presented it. He may have had it when he demanded payment, or he may have demanded payment of the bill without having it. It is probable he had it, but the law will not permit the liability of an indorser to be established by the substitution of probability for proof. The statement, therefore, that he demanded payment of it, is not proof that he presented or exhibited it. If it be essential that the bill should be presented or shown, and payment thereof demanded, it follows that both the presentment of the bill for payment and the demand of payment should be stated. Chitty (page 492) says the notary should present it and demand payment, and if payment is refused he should protest it, which is a formal declaration that he presented it, &c. From this, it appears the protest must state the presentment, that is, the exhibition of the bill to the acceptor, and the demand of payment.

Aware of the difficulty of sustaining their opinion, if the same rule of evidence applied to the statements of the notary that would apply to the same statements on oath by a private individual, they say he is a public officer, and it is not to be presumed that he would do so useless an act as to go to the house of the acceptor and demand payment if he had not the bill with him, and that the law will presume the notary had done his duty. The principle, that the law presumes public officers to do their duty, it is respectfully submitted, was misapplied by the court. It is true, in a proceeding against an officer for dereliction of duty, the presumption is that he has done his duty, and the contrary must be proved, though it involve a negative. But if this principle applies to a collateral proceeding like this, it proves too much, and the long train of recorded decisions, requiring a protest to be produced on the trial, will at once be struck from the commercial code. If the law presumes he will do his duty, why require the protest to be produced, — proof that the bill was left with him to protest would be sufficient, because, as it was his duty to protest it, it will be presumed he did so. So, when it is made his duty to give notice when he protests a bill, as is the case in some of the States, no notice need ever be proved ; all that is necessary, upon the principle assumed by the court, is in such case to prove the protest, and then, as it was the notary's duty to give the notice, it will be presumed he gave it. Nay, if it is proved that the bill was put in his hands

to protest, it will be presumed he did his duty, and therefore it will be presumed he did protest it. But the question might be here asked, What is the duty of a notary when a foreign bill is placed in his hands for protest? It is not merely to present and demand payment, but to set forth these facts in his protest. If he omits to do so, the protest on its face shows he has not done his duty, and of course the presumption falls to the ground. The principle might be carried out to cure any defective statement as to the time notices were given; if omitted to be stated when notice was given, as the notary's duty was to give notice, at furthest, the day after the protest, it could be presumed he did so, although his protest does not show the time when he gave the notice.

The court endeavour to distinguish the case from the one in 12 Louisiana Rep. 472. They say, in the last named case, the notary certified that he went to the Planters' Bank, and was informed by the teller there were no funds in the bank to pay the note, &c. He does not say, says the court, that " he presented the note or made a demand of payment." What was the use to do so, if their opinion in 16 Louisiana Rep. is correct? According to that opinion, as he was presumed to do his duty, and as it was his duty to present the note and demand payment, this would be presumed; nay, as they say in that case, that it is not to be presumed the notary would do so useless an act as to go to the house of the acceptor without the bill; so, in this case, they might with equal justice have said it would not be presumed he would go to the bank to demand payment, and yet make no de nd when he got there. Why was it not presumed he did his duty in that case, as well as in the last? Simply because in that case the court decided, very correctly, that the facts which constitute a legal presentment, &c., must appear on the face of the protest, and cannot be presumed.

Upon the whole, it is believed, both on principle and authority, that the case in 16 Louisiana Rep. cannot be sustained, and that the protest in this case is not legal evidence of presentment, to charge the defendant.

Mr. Justice McKINLEY delivered the opinion of the court.

The plaintiffs brought an action of assumpsit, in the Circuit Court of the United States for the Southern District of Mississippi, against the defendant, as indorser of a bill of exchange, drawn at Vicksburg, in said State, by Steele, Jenkins, & Co., for $6,133, payable twelve months after the first day of February, 1837, to R. H. & J. H. Crump; and addressed to Kirkman, Rosser, & Co., at New Orleans, and by them afterwards accepted, and indorsed by the payees and the defendant.

On the trial of the cause, the plaintiffs offered to read as evidence to the jury a protest of the bill of exchange, to the reading of which the defendant objected; because it did not appear in the

protest, that the notary had presented the bill to the acceptors, or either of them, when he demanded payment thereof. · And upon the question, whether the protest ought to be read to the jury as evidence of a presentment of the bill to the acceptors for payment, or as evidence of the dishcnor of the bill, the judges were opposed · in opinion. Which division of opinion they ordered to be certified to this court ; and upon that certificate the question is now before us for determination.

The indorser of a bill of exchange, whether payable after date or after sight, undertakes that the drawee will pay it, if the holder present it to him at maturity and demand payment ; and if he refuse to pay it, and the holder cause it to be protested, and due notice to be given to the indorser, then he promises to pay it. All these conditions enter into and make part of the contract between these parties to a foreign bill of exchange ; and the law imposes the performance of them upon the holder, as conditions precedent to the liability of the indorser of the bill. A presentment to and demand of payment must be made of the acceptor personally, at his place of business or his dwelling. Story on Bills, § 325. Bankruptcy, insolvency, or even the death of the acceptor will not excuse the neglect to make due presentment ; and in the latter case it should be made to the personal representatives of the deceased. Chitty on Bills, 7th London ed. 246, 247 ; Story on Bills, 360 ; 5 Taunt. R. 30 ; 12 Wend. R. 439 ; 2 Douglass, 515 ; Warrington v. Furbor, 8 East, 245 ; Esdaile v. Sowerby, 11 East, 117 ; 14 East, 500.

The reasons why presentment should be made to the drawee are, first, that he may judge of the genuineness of the bill ; secondly, of the right of the holder to receive the contents ; and thirdly, that he may obtain immediate possession of the bill upon paying the amount. And the acceptor has a right to see that the person demanding payment has a right to receive it, before he is bour . to answer · whether he will pay it or not ; for, notwithstanding his acceptance, it may have passed into other hands before its maturity. And he, · as well as the drawee, has a right to the possession of the bill, upon paying it, to be used as a voucher in the settlement of accounts with the drawer. Story on Bills, § 361 ; Hansard v. Robinson, 7 Barn. & Cressw. 90.

Mr. Justice Story has given the form of a protest now in use in England, in his treatise on bills of exchange, by which it will be seen that the words " did exhibit said bill " are used, and a blank is left to be filled up with " the presentment, and to whom made, and the reason, if assigned, for non-payment." ' Story on Bills, 302, note. This, with the authorities already referred to, shows that the protest should set forth the presentment of the bill, the demand of payment, and the answer of the drawee o. acceptor. The holder of the bill is the proper person to make the present-

ment of it for payment or acceptance. Story on Bills, § 360. But the law makes the notary his agent for the purpose of presenting the bill, and doing whatever the holder is bound to do to fix the liability of the indorser. Every thing, therefore, that he does in the performance of this duty must appear distinctly in his protest. He is the officer of a foreign government; the proceeding is *ex parte*; and the evidence contained in the protest is credited in all foreign courts. Chitty on Bills, 215; Rogers *v.* Stephens, 2 T. R. 713; Brough *v.* Parkings, 2 Ld. Raym. 993; Orr *v.* Maginnis, 7 East, 359; Chesmer *v.* Noyes, 4 Camp. 129. The evidence contained in the protest must, therefore, stand or fall upon its own merits. It rests upon the same footing with parol evidence; and if it fails to make full proof of due diligence on the part of the plaintiff, it must be rejected.

But the counsel for the plaintiffs insists, that the statute of Louisiana, and the interpretation given to it by the Supreme Court of that State in the case of Nott's Executor *v.* Beard, 16 Louisiana Rep. 308, have so changed the law merchant, as to render unnecessary the presentment of a foreign bill for payment. After a careful examination of the opinion of the court in that case, we are unable to perceive any intention manifested to depart from the settled usages of the law merchant; but, on the contrary, they attempt by argument and authority to bring the case within that law. The question before that court was the identical question now before us. The protest was objected to because it did not show that the bill had been presented by the notary to the acceptors for payment. To this objection, that court said it might perhaps have been more specific if in the protest it had been stated that the bill was presented, and payment thereof demanded. And they admit the law is well settled, that, before the holder of an accepted bill can call on the drawer for payment, he must make a presentment for, or demand of, payment, and give notice of the refusal. Here, then, is a definite proposition, asserting that a presentment for payment and a demand of payment are convertible terms, and that the proof of either would be sufficient.

To support this proposition, they refer to Chitty on Bills, and Bayley on Bills, and the annotators on them. And as further proof and illustration, and to show that *demand of* payment should be preferred to *presentment for* payment, they refer to the statute of Louisiana, passed in 1827, in which they say the word *demand* is used in it, and that the word *pre, entment* is not; and they refer to the statute, also, to show that not ries were vested with certain powers by it, which gave authority to their acts; and that they being public officers, the presumption of law is, that they do their duty; and therefore, if the protest ere defective, and liable to the objection urged against it, this presumption of law would cover

all such defects. This is substituting presumption for proof, in violation of all the rules of evidence.

With all due respect for that distinguished tribunal, we are constrained to dissent from the general proposition they have laid down on the subject of demand and presentment, and from all their reasoning in support of it. Due diligence is a question of law ; and we think we have shown, by abundant authority, that the holder of an accepted bill, to fix the liability of the drawer or indorser, must present it to the acceptor and demand payment thereof. It may be well here to repeat what Lord Tenterden, C. J., said on this subject, in delivering the judgment of the Court of King's Bench, in the case of Hansard *v.* Robinson, before referred to. He said, — "The general rule of the English law does not allow a suit by the assignee of a chose in action. The custom of merchants, considered as part of the law, furnishes in this case an exception to the general rule. What, then, is the custom in this respect ? It is, that the holder of the bill shall present the instrument, at its maturity, to the acceptor, demand payment of its amount, and, upon receipt of the money, deliver up the bill. The acceptor paying the bill has a right to the possession of the instrument for his own security, and as his voucher, and discharge *pro tanto*, in his account with the drawer. If, upon an offer of payment, the holder should refuse to deliver up the bill, can it be doubted that the acceptor might retract his offer, or retain his money ? " This extract, we think, furnishes a full answer to all that has been said by the Supreme Court of Louisiana to prove that it is not necessary to present the bill to the acceptor for payment ; and to the presumption of law relied on to cure the defects in the protest.

But to show, that, by the statute of Louisiana, the presentment of a bill to the acceptor for payment is not dispensed with, and that the presentment is, by a fair construction of the act, as much within its true intent and meaning as the demand, we proceed to examine its provisions. The principal object of the legislature in passing this statute seems to have been, to give authority to notaries to give notices, in all cases of protested bills and promissory notes ; and to make their certificates evidence of such notices. And, therefore, all that is said on the subject of the demand and the manner of making it, and the other circumstances attending it, was not intended as a new enactment on these subjects, but as inducement to the powers conferred on the notary, which was the principal object of the statute, as will appear, we think, by reading it. That part of it which relates to this subject is in these words : — " That all notaries, and persons acting as such, are authorized, in their protests of bills of exchange, promissory notes, and orders for the payment of money, to make mention of the demand made upon the drawee, acceptor, or person on whom such

Musson et al. *v.* Lake.

order or bill of exchange is drawn or given, and of the manner and circumstances of such demand ; and by certificate, added to such protest, to state the manner in which any notices of protest to drawers, indorsers, or other persons interested were served or forwarded ; and whenever they shall have so done, a certified copy of such protest and certificate shall be evidence of all the notices therein stated."

It seems to have been taken for granted by the legislature, that the notaries knew how to make out a protest, and therefore they did not prescribe the form, but gave the substance of it, to which the notary was required to add a certificate of the manner in which he had given notices, and when done, according to the statute, a certified copy of the protest and certificate should be evidence, not of the demand and manner and circumstances of the demand, but of the notice only. This shows that the intention of the legislature, in passing this part of the statute, was merely to authorize the notaries to give notices, and to make the copy of the protest, and the certificate added to it, evidence of notice in the courts of Louisiana. But independent of this view of the subject, we think the language employed in this statute includes the presentment of the bill for payment, and for all other purposes, as fully as it does the demand of payment. In giving construction to the act, the phrase, "and of the manner and circumstances of such demand," cannot be rejected, but must receive a fair interpretation. When taken in connection with other parts of the statute, what do these words mean ? The manner of making a demand of payment, we have seen, is by presenting the bill to the drawee or acceptor ; and so important is this part of the proceeding, that the omission to present the bill to the acceptor will justify his refusal to pay it, although payment be demanded. The legislature cannot be presumed to have intended to make so important a change in the law merchant as that ascribed to them by the counsel for the plaintiffs, without at the same time providing some other mode of obtaining the acceptance and payment of bills of exchange, and of holding drawers and indorsers to their liabilities. It is but reasonable, therefore, to give to the phrase before referred to such construction, if practicable, as will leave the law merchant as it stood before the passage of the statute, and carry into effect the main intention of the legislature. This, we think, may fairly be done without doing any violence to the intention or the language of the statute.

The *manner of the demand* must, therefore, mean the presentment of the bill for either acceptance or payment ; and *the circumstances of the demand*, we think, means the place where the presentment and demand is made, and the person to whom or of whom it is made, and the answer made by such person. It is very clear, that bills payable at sight, and after sight, are within the

meaning of the statute; because it provides for a demand of payment of the acceptor of a bill. Now how can there be an acceptor of a bill, without a presentment for acceptance? Until the bill become due, payment cannot be demanded of the drawee. This shows, that without the word presentment and the word demand also, the plain meaning of the statute could not be carried into effect. A bill, payable at a fixed period after its date, need not be presented for acceptance; it is sufficient to present it and demand payment when it arrives at maturity; but a bill payable at sight, or after sight, can never become due until after it has been accepted. How is the holder or the notary to obtain the acceptance of such a bill, under the decision of the Supreme Court of Louisiana? Will it be sufficient to demand payment of the bill? That would be a nugatory act, because it is not due; then it must be admitted, that, by fair and necessary construction, the word presentment is within the plain meaning and intention of the statute, and that the bill may be presented for acceptance or for payment, and therefore neither the statute nor the decision of the Supreme Court of Louisiana has changed the law merchant in any of these respects.

There is, however, another question, entirely independent of the statute and the decision of the Supreme Court of Louisiana, which may be decisive of the case before this court; and that question is, Whether the contract between the holder and indorser of the bill in controversy is to be governed by the law of Louisiana, where the bill was payable, or by the law of Mississippi, where it was drawn and indorsed. The place where the contract is to be performed is to govern the liabilities of the person who has undertaken to perform it. The acceptors resided at New Orleans; they became parties to the bill by accepting it there. So far, therefore, as their liabilities were concerned, they were governed by the law of Louisiana. But the drawers and indorsers resided in Mississippi; the bill was drawn and indorsed there; and their liabilities, if any, accrued there. The undertaking of the defendant was, as before stated, that the drawers should pay the bill; and that if the holder, after using due diligence, failed to obtain payment from them, he would pay it, with interest and damages. This part of the contract was, by the agreement of the parties, to be performed in Mississippi, where the suit was brought, and is now depending. The construction of the contract, and the diligence necessary to be used by the plaintiffs to entitle them to a recovery, must, therefore, be governed by the laws of the latter State. Story on Bills, § 366; 4 Peters, 123; 2 Kent's Comm. 459; 13 Mass. R. 4; 12 Wend. R. 439; Story on Bills, § 76; 4 Johns. R. 119; 12 Johns. R. 142; 5 East, 124; 3 Mass. R. 81; 3 Cowen, 154; 1 Cowen, 107; 5 Cranch, 298.

Musson et al. v. Lake.

Whatever, therefore, may have been the intention of the legislature in passing the statute, and of the Supreme Court of Louisiana in the decision of the case referred to, neither can affect, in the slightest degree, the case before us. In Mississippi the custom of merchants has been adopted as part of the common law ; and by that law and their statute law, this case must be governed. We think, therefore, the protest offered by the plaintiff, as evidence to the jury, ought not to have been received as evidence of presentment of the bill to the acceptors for payment, nor as evidence of the dishonor of the bill ; which is ordered to be certified to the Circuit Court accordingly.

Mr. Justice McLEAN. I think the protest was evidence. The notary made demand of payment, at the maturity of the bill, and we know that he had possession of the bill, from the fact of the protest being made on the same day. Now as the notary could not make a legal demand in the absence of the bill, the fair, if not the necessary, inference is, that he had possession of the bill when he demanded payment.

Mr. Justice WOODBURY. I regret being compelled to dissent from a portion of the opinion of the majority of the court which has just been pronounced. This I should be content to do without explanation, if the grounds for it did not appear to be misunderstood. I do not question that a note should be present usually when payment is demanded (Freeman v. Boynton, 7 Mass. R. 483 ; 17 Mass. R. 449 ; 3 Metcalf, 495) ; and that a written protest is the proper evidence to show a presentment or demand in the case of a foreign bill of exchange (8 Wheat. 333 ; Burke v. McKay, 2 Howard, 71). But, in my view, a protest like this was competent evidence to be submitted to the jury, in order that they might infer from it that the note was presented when the demand was made. That was the point presented by the division of opinion between the judges in the court below. One held it was competent evidence from which to make such an inference, and the other, it was not, and we are merely to decide which was right.

The question of due presentment and demand is a mixed one of law and fact, and not one of mere law, unless all the facts are first conceded or agreed ('United States v. J. Barker, 1 Paine's C. C. R. 156). This is in analogy to the rule about notice (1 Peters, 583). In all cases where it is possible for the jury on any reasonable hypothesis to infer a proper presentment from the protest offered, it is safer that the writing should not be withdrawn from them, but go in, and the court instruct the jury on the whole evidence what the law was on such facts as they might be satisfied of. Chancellor Kent (3 Comm. 107) thinks it very difficult, in these mixed questions of law and fact about commercial paper, to do

justice by any other course. In this case the jury might or might not be satisfied of the fact of the bill being present when the demand was made. But why not let them pass on that fact ? It is manifest that no evil or danger would result from leaving the matter to them, under due instructions from the court, provided there be no legal obstacle to such a course.

Is there, then, any such obstacle ?

It is conceded, on both sides, that the protest is competent evidence, and contains enough from which the jury could infer a demand of payment. That is the most material part of the notary's duty. It is not only so described in some elementary treatises, but the duty of having the note present, or of calling with it at the hours of business alone, are not described separately ; but are involved or implied in the general duty of making a demand. Thus Dane, in his Abridgment, *Bills of Exchange* (art. 11, § 1), says, — " In making a protest, three things are to be done, — the noting, demanding, and drawing up the protest." " The material part is the making of the demand." So the word *demand* is at times used as synonimous with the word *presentment* by Bailey. 16 Louisiana Rep. 311.

But the protest in this case states not only a demand, but that payment of the bill was refused, and that he had it in possession, so as to make a copy " of the original draft " on the back of the protest, or, to use his own words, " whereof a true copy is on the reverse hereof written," and also " demanded payment of said draft," and was answered, " that the same could not be paid."

Under these expressions, it could hardly be deemed unfair, or any stretch of probability, to infer that the bill was present at the demand, and the more especially as the notary knew it was his duty to have it present, and does not state that any objection was made, or refusal to pay, on account of its absence, as he should have stated, if such was the truth. My views do not differ from those of a majority of this court concerning the importance of having the principles as to commercial law, and especially commercial instruments, uniform, and as little fluctuating as possible ; and hence as to them I would make no innovation here. But our difference is rather on a question of evidence. Thus, had the testimony offered been submitted to the jury, and they had inferred from it a due presentment of the note, it would not change any commercial principle as to the necessity of presentment, but merely establish the fact of presentment here on evidence deemed by the jury to render that fact probable. And if juries should be disposed to find such a fact on slight testimony, it would do no injury to commercial paper, or commercial principles, or substantial justice between parties, but merely indicate an increased liberality as to forms, where substance has been regarded ; that is, where the vital point in the transaction is beyond controversy, namely, that payment has clearly

been demanded and not made. Such a course would accord, also, in spirit, with what was laid down by this court in 1 Peters, 583, that rules as to commercial paper ought to be formed and construed so as to be reasonable and founded in general convenience and with a view to clog as little as possible, consistently with the safety of parties, the circulation of paper of this description.

There is nothing in the nature of protests and presentments which on principle requires any increased strictness in the proof of them, but, on the contrary, much to justify every reasonable presumption in their favor. Any holder would be anxious to get his money at once of the drawee, and not neglect to have the note with him so as to give it up on payment and prevent delay. So would he wish to be paid and excused entirely from making protest, rather than resort to that and notice, and suffer the delay of recovering it of a drawer or indorser.

Both of these considerations strengthen the inference that he and his agent would present the note, or have it with them, when demanding payment, and render it reasonable, after slight proof of presentment, to leave it to the opposite party to rebut that inference, so natural, by stronger proof that the note was not present, if the facts would warrant such proof.

Another consideration against requiring great or greater rigidity in the evidence of a presentment and form of protest is the fact, that a protest is of less materiality than notice.

As an illustration, that the notice is deemed more material than the protest, "omitting to allege in the declaration a *protest* of a bill is only form, not to be taken advantage of on a general demurrer." 1 Dane's Abr., *Bills of Exchange*, ch. 20, art. 11, § 9; Lill. Ent. 55; 3 Johns. R. 202; Salomons v. Staveley, Doug. 684, in note to Rushton v. Aspinall.

But, omitting to state a *demand* or *notice* is bad after verdict. Doug. 684.

Dane, in his Abridgment (vol. 1, p. 395, ch. 20, art. 10, § 1), says, — "Notice is very material. Protests are mere matter of form." Yet notice may be very loose, and it answers in all cases, if it disclose merely the fact of *demand*, and a reliance on the person notified for payment. Shed v. Brett, 1 Pick. 401; Miller v. Bank of United States, 11 Wheat. 431; Gilbert v. Dennis, 3 Metc. 495; 2 Johns. Ch. R. 337; 12 Mass. R. 6; 4 Wash. C. C. Rep. 464.

"The notice, however, should inform the party to whom it is addressed, either in express terms or by necessary implication, or, at all events, by *reasonable intendment*, what the bill or note is, that it has become due, that it has been duly *presented* to the drawer or maker, and that payment has been refused." Chitty on Bills (9th Lond. & 10th Amer. edit.), 469.

But it has again and again been held, that the notice need not

state · a presentment in express terms, and that it will be implied from stating a demand and non-payment, and a looking to the indorser. 9 Peters, 33 ; 3 Kent's Comm. 108 ; 10 Mass. R. 1 ; 4 Mason, 336 ; 1 Johns. Cas. 107. `So, " Your note has been returned dishonored," is enough from which to intend all. See various other illustrations, 6 Adolph. & Ellis, 499 ; 5 Dowl. 771 ; 2 Chit. R. 364 ; 2 Mees. & Welsb. 109.

It may be a letter, — merely to that effect, — and need not be a *copy of the protest.* 1 Chit. (2d Eng. & 1st Amer. edit.), 363, 364, 498, 499 ; 3 Camp. R. 334 ; 2 Starkie, 232 ; Goodwin *v.* Harley, 4 Adolph. & Ellis, 520, 870 ; 4 Eq. R. 48. See 8 Mass. R. 386. And it has been adjudged, that the notice need not state, in express terms, that the note was present, or if present was exhibited, if it only contained matter from which, by *reasonable intendment*, this can be inferred. Chitty on Bills (last edit.), 469 ; 2 Peters, 254 ; 9 Peters, 33.

It not being necessary, then, to inform the indorser of the presentment of the note itself, in so many words, there seems to be no use in having the fact stated at length in the protest, if enough appear to render the fact probable.

It would be difficult to find a reason, in the absence of positive law, why the form of the protest should not be dealt by as liberally as that of notice ; and if, like the other, it disclose a demand, allow the jury to infer from that, as in the case of notice, that the note was present. Indeed, a protest is not required to be in writing at all except in case of foreign bills, drawn on persons abroad. 1 Chitty on Bills, 643 ; Rogers *v.* Stevens, 2 D. & E. 713 ; 2 Starkie on Ev. 232 ; 6 Wheat. 572 ; 8 Wheat. 333 ; 3 Wend. 173 ; 2 Peters, 179 ; 1 Cranch, 205. And then it doubtless originated in a rule merely allowing it to be done to save the expense and trouble of bringing a witness from abroad to prove the fact, rather than making it imperative.

Instead of a written protest being better evidence than a witness of the presentment and demand in case of inland bills or promissory notes, or even foreign bills drawn on persons here, it is inferior evidence to witnesses for proving presentment and demand, and is usually inadmissible, except by special statutes. 1 Chitty on Bills, 405 ; 3 Pick. 415 ; 6 Wheat. 572 ; 5 Johns. R. 375 ; 4 Wash. C. C. Rep. 148 ; 4 Camp. R. 129 ; 2 Howard's U. S. Rep. 71 ; 8 Wheat. 146.

Some seem to suppose that there is danger in allowing an informal written protest to go to the jury as evidence to be weighed in proving that the note was present. But there can be no more in that than in allowing an informal notice to go to the jury. The jury must be satisfied, in both cases, and should so be instructed, that all has been done which the law in both requires. If there be any defence in either case, that all proper has not been done, it can

probably be shown by counter evidence in one as well as the other. Why should it not be ? and why is not that an ample security against being improperly charged ? For the protest is not a written contract between the parties, or a sealed instrument not open to be contradicted by parol evidence. But it is a mere certificate of a notary, a subordinate officer, admitted for convenience as *primâ facie* evidence of certain facts, and allowed to that extent in order to save the expense of witnesses and delays, but ought to be always open to be impaired or disproved by the other party in interest, who has never been heard before him, and of course cannot reasonably be concluded for ever by his acts. The notary is not required to swear to them, when they are admissible as evidence, as he would be to a deposition, because of his official obligations and standing. But the character and construction that properly belong to his certificate as evidence seem to be like those of a deposition ; and if it states, in so many words, that the note was presented, or states what justifies such an inference, there appears to be no good reason why the contrary may not be proved, if such was the fact, and the indorser be thus protected against statements or inferences not well founded. And the absurdity of the contrary course is still more apparent as to protests, when one made by any respectable merchant, and attested by two witnesses, in the absence of a notary, has the same validity as his. Chitty on Bills, 303 ; Story on Bills, § 276.

In Nicholls *v.* Webb, 8 Wheat. 336, counter testimony was held to be admissible against the minutes of a notary offered to prove demand and notice.

So is it admissible, that the notary mistook the place, and did not demand the bill at the place of business for the drawee. Insurance Company *v.* Shamburgh, 2 Martin's R. (N. S.) 513.

In Vandewall *v.* Tyrrell, Mood. & Malk. 87, counter evidence was offered, and avoided the protest, because the clerk of the notary, and not the notary himself, as stated in the protest, made the demand. See Chitty on Bills, 495, *note.*

This point thus being established on both principle and precedent, all the danger or difficulty as to the merits of the case, by admitting a protest like this, is obviated. But it is further urged against it, that presentment is averred in the declaration, and therefore must be proved. This we admit. Chitty on Bills, 643 – 647. And so is notice averred in the declaration and notice of a presentment, and so that must be proved. 1 Chit. 633 ; Doug. 654, 680. All we urge here is to let them be proved by similar general statements, from which the similar inferences may be drawn in one case as the other, that the note was present at the time of the demand, unless the contrary is shown, — as it may be, if true.

Again, it is said that the forms of protest generally state, that the bill was present or exhibited. This is true. 1 Chitty,

395, 396 (1st Amer. edit.) ; Story on Bills of Exchange, § 276, note.

But we are aware of no case deciding that this fact must be stated, in so many words, in the protest itself, though we admit that the jury must be satisfied that the fact existed. Minutes in the book of a messenger deceased have been held to be proof to be submitted to a jury as evidence of due demand and notice. Welsh *v. Barrett*, 15 Mass. R. 380. Yet there does not appear to have been a presentment stated, *eo nomine*, or that there was any but inferential evidence that he had the note with him. See, also, North Bank *v. Abbott*, 13 Pick. 469. And it is not a little remarkable, that the only statute in England (9 and 10 Will. 3) which prescribes the form of a protest, and which is in relation to inland bills of five pounds and upwards, in order to recover damages and interest, the form does not state in so many words that the bill was present or was exhibited, but merely " at the usual place of abode of the said A. have *demanded* payment of the bill," &c. Chitty on Bills, 465 (9th ed.). In such cases, precisely that, and that alone, must be done which is contended for here, namely, leave it to the jury to infer the presence of the bill from its payment being *demanded*, and any other facts stated, unless the contrary is shown. Look at another analogy. It is necessary that the exhibit of the note and the demand be made in the legal hours of business. Chitty on Bills, 349, 354 ; Ruben *v.* Bennet, 2 Taunt. 388 ; 2 Camp. 537 ; Parker *v.* Gordon, 7 East, 385 ; 1 Maul. & Selw. 20. But, as in respect to the presence of the note, no case holds that this must appear by so many words in the protest. And it is not stated, in the common forms, that the demand was made in the usual hours of business. 1 Chitty on Bills, 396. On the contrary, the jury are allowed or instructed that they may infer, from the statement of the demand and non-payment, that they were made within the proper hours. And if it was not, the other party would doubtless be allowed to disprove it by counter evidence.

How can such a case, then, be distinguished in principle from this ? — except that there is much less in the usual form of protest from which to infer that the bill was presented in legal hours, than there is in this protest from which to infer that the bill was present when the demand was made. I am the more inclined, also, to the opinion, that this protest is competent evidence, because, under a special law in Louisiana, passed March 13th, 1827, such protests have been adjudged sufficient. Their law uses the word " demand " when describing what the protest shall contain, and such a protest is there allowed to go to the jury as evidence from which to infer that the note was present. Nott's Executor *v.* Beard, 16 Louisiana R. 308.

The bill now in dispute was on its face payable in Louisiana ; and hence the principles of commercial law require that the protest

be made at the time and in the manner prescribed by that State. Story on Bills of Exchange, § 176.; 1 Chitty on Bills, 193, 506 ; Story's Conflict of Laws, § 360.

But whether the statute of Louisiana prescribing what protest shall be sufficient ought to be considered as affecting any thing beyond the evidence of protest in its own courts, is not very clear on principle. (See cases, Story on Bills, § 172.)

Hence, in forming an opinion, I have placed it mainly on general considerations, though in the construction of a Louisiana statute, which clearly affected the contract, and not the evidence ; and where the judgment of its court clearly rested on the statute alone, about which some doubt exists, it ought unquestionably to control us in respect to contracts made or to be fulfilled there, even if a departure from the general principles of commercial law. I wish, also, to avert some serious consequences that I apprehend may result from the decision of the majority of the court in several of the States of the Union.

Bills of exchange drawn in one State on persons in another must be considered, under the previous decisions of this court, as foreign bills. Townsley *v.* Sumrall, 2 Peters, 179, 586, 688 ; Lonsdale *v.* Brown, 4 Wash. C. C. R. 87, 153 ; 1 Hill, 44 ; 12 Pick. 283 ; 15 Wend. 527 ; 5 Johns. 375 ; Dickins *v.* Beal, 10 Peters, 579. Demand of payment, then, cannot be proved in suits upon them out of the State where presented, unless by a written protest, according to the cases before cited.

Whenever the protest, then, in such case, does not state in detail a presentment or presence of the bill, though stating a demand, refusal, and no objection, the protest must, as in this decision, be ruled out as incompetent evidence ; and the same decision virtually implies. that no other evidence except the written protest is admissible to show that fact, or indeed any fact which may be omitted by accident or otherwise in the written protest, and that no inference can be admitted to be drawn from the protest as to presentment, when only a demand, refusal, and no objection are stated, as here. These consequences, with others before named, I would avoid, by making the protest competent evidence, and when it showed a demand, refusal, and no objection explicitly, as here, would leave it to the jury, from that and the other circumstances, to say whether they were or were not satisfied that the note was present.

In this way it is easy to reconcile full action of the jury on the facts with that of the court on the law, and this, too, without any innovation or change in the rule as to commercial paper, or any violation of adjudged cases, but rather in conformity to them and to several strong analogies.

This court have in other cases gone still farther, and held it proper even to expand or enlarge the rules of evidence in certain exigencies. In Nicholls *v.* Webb, 8 Wheat. 332, the principle laid

down by Lord Ellenborough, in Pritt v. Fairclough, 3 Camp. R. 305, as to the rules of evidence, was adopted, namely, " That they must expand according to the exigencies of society." And in the Bank of Columbia v. Lawrence, 1 Peters, 583, speaking of a rule as to diligence, Thompson, J., says, — " For the sake of general convenience it has been found necessary to enlarge this rule." *

But all I ask here is to go as far as the existing rules of evidence seem to justify, and let reasonable inferences and presumptions be made by the jury from all that is stated in the protest, and thus decide whether the note was not probably present when the demand was made.