## Case No. 17,096.

### WALLACE v. AGRY et al.

[4 Mason, 336.] [1]

Circuit Court, D. Maine. May Term, 1827.

SHIPPING—AUTHORITY OF MASTER TO DRAW BILLS OF EXCHANGE — NONACCEPTANCE AND NOTICE — PROTEST — PRESENTMENT — MODE OF TRANSMISSION.

1. Where a bill of exchange is drawn by the master of a ship, by authority of the owners, in his own name, for cargo supplied for the owners, the latter are liable, and are entitled to the same defence against the bill, in case of dishonour, that they would be, as drawers.

2. Where the declaration contains due averments of the presentment of a bill for acceptance, and due dishonour and notice to the drawer, proof of these averments is sufficient to maintain the suit, although there are subsequent averments in the declaration of presentment for payment, non-payment and notice thereof, which are not proved.

[Cited in Musson v. Lake, 4 How. (45 U. S.) 282.]

3. The right of action is complete by the nonacceptance, protest, and notice.

4. Taking of a bill of exchange is, at most, only prima facie evidence of a satisfaction and extinguishment of an antecedent debt. Quaere, how far even this is to be relied on, as a general presumption in foreign states.

[Cited in The Betsy and Rhoda, Case No. 1,366; Risher v. The Frolic, Id. 11,856; Underwriters' Wrecking Co. v. The Katie, Id. 14,342.]

5. A copy of the protest for non-acceptance need not accompany the notice of dishonour. It is sufficient to produce it at the time.

[Cited in Browning v. Andrews, Case No. 2,040.]

[Cited in Atwater v. Streets, 1 Doug. (Mich.) 457.]

6. A bill of exchange, payable at 60 days after sight, was drawn in Havana upon London. Held, that it need not be sent from Cuba direct to London; but might be sent indirectly in any manner justified by the course of trade; and be sent for sale to the United States.

7. No absolute rule can be laid down, as to the time within which such a bill must be

---

[1] [Reprinted by permission.]

[1] [Reported by William P. Mason, Esq.]

presented for acceptance. The only rule is, that it must be presented within a reasonable time; and what is a reasonable time depends upon the circumstances of each particular case. [Cited in Durnell v. Sowden, 5 Utah, 216, 14 Pac. 334; Angalétos v. Meridian Nat. Bank, 4 Ind. App. 578, 31 N. E. 368.]

Assumpsit. The principal circumstances were as follows: The defendants [Thomas Agry and others], who are citizens of Maine, were owners of the brig Diana, of which William Heddean was master. She arrived at Havana in the Island of Cuba, and was consigned to the plaintiff [William B. Wallace], a citizen of Connecticut, but a resident merchant at Havana, by the master, to procure freight on a freighting voyage. Six hundred boxes of sugar were procured on freight, on a voyage from Havana to Bremen, upon an understanding, that 150 boxes more should be taken on board on account of the owners. The master had no authority to take any sugars on board on the owners' account; but it was agreed between him and the plaintiff, that he should receive these on board on their account, and remit the proceeds to Samuel Williams at London, and should draw a bill for the amount on Williams, payable at sixty days sight; that the sugars should be insured in Boston on the owners' account, and that a Mr. Whitney, the agent and correspondent of the plaintiff, should be employed to effect the insurance. Williams was known to both parties to be the correspondent of the owners in London; but no funds were supposed by either party to be in his hands, out of which to pay the bill, except those arising from the proceeds remitted from Bremen. In fact, however, he had other funds of the defendants'. The master accordingly, on the 18th of June, 1825, at Havana, drew a bill, in his own name, on Williams, payable to the plaintiff or his order, for £848. 6s. 11d. (the amount of the sugars advanced by the plaintiff), at sixty days' sight to be charged to the owners' account. Information was duly communicated of his proceedings to the defendants, who ratified the same. The brig proceeded on her voyage, and arrived safely at Bremen, and while sailing up the British channel the master communicated the information of the bill's being drawn, and the intended remittance to Williams, who acknowledged the receipt of the letter. The remittance of £848. 6s. 11d. was duly made for the payment of the bill, and received by him on the 19th of August. Williams failed on the 24th of October following, and was duly declared a bankrupt. The bill was sent to Boston, by the plaintiff, to his agent, Mr. Whitney, indorsed payable to him, together with a bill of lading of the sugars, and instructions to procure insurance, and reached Whitney on the 7th of July, 1825. He was informed, at the same time, that the plaintiff would draw on him for the amount of the bill at sixty days; and he was understood to be at liberty to sell the bill in the market to reimburse himself, or to remit it to London on his own account. He made insur-

ance, and communicated the facts to the defendants in course of mail. Whitney paid the bill drawn on him for the amount by the plaintiff, and charged it in account, the bill having been transmitted to him merely as agent. He attempted to sell the bill, but thinking the price of exchange too low, he retained it until the 29th of September, when he remitted it to London, with directions to Williams, in whose hands he had funds, to place it to his credit. The bill arrived in London on the 31st day of October, and was duly protested for non-acceptance; and the protest and information of all the facts were sent by letter to Whitney, by the next regular ship from Liverpool, which sailed on the 2d of November. The letter reached Whitney on the 28th of December, who immediately gave information of the protest for non-acceptance to the defendants by mail, but did not transmit the protest or a copy to them. Previous to this period, on the 5th of December, a rumour being current in Boston of the failure of Williams, Whitney wrote to the defendants, and stated his expectations, that the bill might be returned protested, and wished them to make some arrangements to take it up on its return; and by letters, on the 8th of December, confirmed the news of the failure. On the 12th of December the defendants replied to the letter of the 8th, and made no objection to their liability to pay, and wished early information of the return of the bill. On the 12th of January, 1826, the defendants, in a reply to the letter of the 28th of December, expressed dissatisfaction at the long detainer of the bill in Boston, and objected to payment on that account. Whitney remonstrated against their conduct in his reply; and on the 24th of January the defendants wrote a letter to Whitney, taking notice of his remarks, and expressing their fears of their inability to pay, and not urging their original objection.

There was conflicting testimony in the case, as to an understanding between the master and the plaintiff at Havana, for delay in transmitting the bill, so that it might not reach London until after the funds should be remitted there; and also as to the bill's being sent to Boston for sale; the plaintiff contending, that there was an express agreement to this effect, and the defendants denying it. There was no direct evidence, that the period of the delay of the bill in Boston was known to the defendants before the letter of the 28th of December enclosing information of the protest for non-acceptance.

The declaration contained two special counts on the bill of exchange, as drawn by the order and on account of the defendants, by the master as their agent, and averred the presentment for acceptance, and protest for non-acceptance, and due notice thereof to the defendants, and also a presentment for payment, and protest for non-payment, and due notice thereof. No presentment for payment, or protest for non-payment, was proved

in the case. There were also counts for money laid out and expended, and for money had and received. The plea was the general issue.

Mr. Longfellow, for defendants, at the trial, contended:

1. That the plaintiff was not entitled to recover; because the averment in the declaration of a presentment for payment, and protest for non-payment was not proved; and though unnecessary to have been averred, yet the plaintiff must prove his case as laid.

2. That the plaintiff was guilty of laches in not transmitting the bill to London at an earlier period, and had thereby made it his own. He was bound to have sent it direct from Havana to England, and had no right to send it to Boston for sale, or indeed for any other purpose, if there was any conveyance between Havana and England. But at all events the holding of the bill from the 6th of July to the 29th day of September, was an unreasonable time to keep it at the risk of the owners, and discharged them. They have the same rights as if they had been the drawers of the bill in their own names. If the bill had been presented to Williams, at any time before the 24th of August, it would have been paid: If presented before the 19th of August, it might have been protested for non-acceptance, but it would have been paid at maturity. And the plaintiff ought, notwithstanding the protest for non-acceptance, to have presented it for payment. The delay was, therefore, a loss of the proceeds, and gross laches. On this point he cited Mullman v. D'Eguino, 2 H. Bl. 565, 469; and urged, that the circumstances showed, that the plaintiff, in effect, guarantied Williams's solvency.

3. That the notice to the defendants of the non-acceptance was bad, because it was not transmitted by the earliest mail from London to Liverpool (but this point was afterwards abandoned); and because neither the protest for non-acceptance, nor a copy of it, was sent to the defendants with the notice, by the letter of the 28th of December; and for this he cited Blakely v. Grant. 6 Mass. 388.

4. No recovery could be had on the money counts for the advance, because the taking of a negotiable security extinguishes the original contract. This is clearly the law of Massachusetts and Maine, whatever may be the law elsewhere. He relied on 5 Mass. 299; 6 Mass. 143; 2 Greenl. 121.

Mr. Ames, for plaintiff, argued:

1. That the plaintiff was entitled to recover. The right of action accrued by the non-acceptance and protest; and there was no necessity to aver or, prove a presentment for payment, or protest for non-payment. The averment, therefore, was immaterial, and might be rejected as surplusage. On this point he cited Chit. Bills, 122, 244, 245, 314, 561; 3 East, 481; 3 Johns. 206.

2. That there was no laches in transmitting the bill. The plaintiff was only bound to use due and reasonable diligence. He had a right to send it to Boston, or elsewhere, for sale, and was not bound to transmit it direct to England. So is the course of trade. The plaintiff had a right to wait until he received information, that the proceeds were in Williams's hands. This could not have been known until the 1st of October. The evidence shows, that the average time in transmitting bills from Havana to London, is 50 days, and from the United States less. Besides, here was an agreement for delay.

3. The notice was in time, and no protest for non-acceptance is by law necessary to be sent to the party charged with the notice. On this point he cited Chit. Bills, 232, 236, 248; 1 Maule & S. 289; 2 Esp. 511; 10 Mass. 1; 7 East, 779; 18 Johns. 240.

4. That the bill was not received as absolute, but as conditional payment. The English is the true law on this point.

STORY, Circuit Justice, in summing up the facts to the jury, said:

Some of the questions of law, in this case, are of considerable importance, and require from the court an explicit opinion. The first objection to the plaintiff's right of recovery is, that no presentment for payment, or protest for non-payment, or due notice thereof to the defendants, is proved according to the allegations of the declaration. I agree, that, under the circumstances of this case, the defendants stand in the same situation as if they were the drawers of the bill. They have adopted the acts of the master, and ratified the draft on Williams; and the plaintiff is therefore at liberty to consider them as subject to the same responsibility as if the bill were drawn by them, and no more. See Van Reimsdyk v. Kane [Case No. 16,872]; Id., 9 Cranch [13 U. S.] 155. But if they were drawers of the bill there would be no necessity of proving the averments in the declaration of presentment for payment and protest, and notice for non-payment. The declaration contains a prior averment of a presentment and protest for non-acceptance, and due notice thereof to the defendants. The cause of action of the plaintiff was complete by such non-acceptance and notice, and it was wholly unnecessary afterwards to make any presentment for payment. The other averments, therefore, of presentment for payment, &c. are wholly immaterial, and may be rejected as surplusage. They constitute no part of the averments entitling the plaintiff to recover. The case is not like that of a material averment, more special than the law requires; there the whole must be proved as laid. But, here, the averments are distinct, of matters foreign to the right of the recovery, and may be rejected without prejudicing the plaintiff's right. "Utile per inutile non vitiatur." Such, upon principle, I take the law to be; and the authorities conform to it. Chit. Bills, 300; 1 Starkie, 7; Mason v. Franklin, 3 Johns. 202.

Then it is said, that there can be no recovery upon the money counts in this case, because the taking of the bill of exchange was a satisfaction, and consequently an extinguishment of the original contract for advances to purchase the sugars. And in corroboration of this position it is argued, that, by the law of Massachusetts and Maine, the taking of a negotiable security for a debt amounts to an absolute, and not merely to a conditional payment. The rule is certainly so in these states, with this limitation, that the taking of such security is only prima facie evidence of being an absolute payment, but the fact is open to explanation, and is not conclusive where the other circumstances qualify, or repel the presumption. Thacher v. Dinsmore, 5 Mass. 299; Maneely v. M'Gee, 6 Mass. 143; Goodenow v. Tyler, 7 Mass. 36; Johnson v. Johnson, 11 Mass. 359; Chapman v. Durant, 10 Mass. 47; Varner v. Nobleborough, 2 Greenl. 121; Greenwood v. Curtis, 4 Mass. 93. Even with this limitation, however, the rule differs from that of the common law, which is adopted in many of the commercial states in the union. By the common law, a negotiable promissory note, given by a debtor to his creditor for a subsisting debt, is not a discharge of the debt. It is not, in a legal sense, a security of a higher nature. Roades v. Barnes, 1 Burrows, 9. But if it be negotiated and outstanding in the hands of a third person, at the time of a suit brought for the original debt, it may be pleaded in bar of the action. See Kearslake v. Morgan, 5 Term R. 513; Rex v. Dawson, Wight. 32. A note or draft of a third person may indeed, by express agreement of the parties, be taken as payment, and thereby operate as a discharge of the debt; but unless there be such an agreement, or the creditor has been guilty of laches, if the note or draft be dishonored, the creditor may resort to his original debt. Puckford v. Maxwell, 6 Term R. 52; Owenson v. Morse, 7 Term R. 64. And this doctrine of the common law I take to be extensively adopted in our own commercial states. Tobey v. Barber, 5 Johns. 68; Schemerhorn v. Loines, 7 Johns. 311; Putnam v. Lewis, 8 Johns. 389; Johnson v. Weed, 9 Johns. 310; Pintard v. Tackington, 10 Johns. 104; Holmes v. De Camp, 1 Johns. 34; Burdick v. Green, 15 Johns. 247; Sheehy v. Mandeville, 6 Cranch [10 U. S.] 253. But if the doctrine of the Massachusetts and Maine courts were admitted to govern in this case, the circumstances are such as would repel any presumption, that the bill was received as absolute payment, so as to discharge the owners from personal responsibility in case of its dishonor. On the contrary, the bill seems to have been relied on as collateral security, and intended to discharge the debt only upon payment out of the funds which were to be remitted from Bremen. If those funds were not remitted by the master, or the bill were not paid at maturity, it can scarcely be believed, that the plaintiff meant to rely exclusively on the credit of the drawer of the bill. The case,

however, does not call for any decision on this point; because it is not to be governed by the law of Massachusetts or Maine.

It is a transaction originating in, and consummated at Cuba, and is to be governed by the law of Spain, and not by the law of America, applicable to this subject. What is the law of Spain, I have no accurate means of knowing; and it is the duty of the party, who sets up the defence, to establish it in evidence by competent proofs. If he fails so to do, the court can take no legal notice of the point. There is, however, much reason to believe, that the civil law, which is the law of Spain, does not make a bill of exchange an extinguishment of a prior debt, unless the parties expressly so stipulated. See Poth. Obl. pt. 3, c. 2, art. 4; 1 Domat, bk. 4, tit. 3, p. 491, § 1.

Another objection is, that the protest of nonacceptance did not accompany the notice to the defendants, and it is strenuously contended, that by our law the notice, without such accompanying protest, or a copy, is a mere nullity. The case of Blakely v. Grant, 6 Mass. 386, contains a remark, which certainly countenances the suggestion; but it was wholly gratuitous in that case, not being called for by any argument urged at the bar, or by any facts in controversy. It is indeed somewhat questionable, whether the remark itself attracted the close observation of the court. I can only say, that, as at present advised, I think that the dictum is not law; and I have no reason to suppose, that it has been actually conformed to in practice. See Stanton v. Blossom, 14 Mass. 116. The English rule, as to foreign bills, is directly the other way. It is the clear result of decisions in England, purporting to be founded on the general law merchant, that the notice is sufficient, though a copy of the protest is not sent. Chit. Bills (5th Ed.) 282; Robins v. Gibson, 3 Camp. 334, 1 Maule & S. 288; Cromwell v. Hynson, 2 Esp. 511; Chaters v. Bell, 4 Esp. 48. But this bill, being drawn in a foreign country, is, strictly speaking, to be governed on this point by the law of that country, as to notice and protest. And in the absence of any other proof the court might well presume, that the law of Spain does not differ from that acted upon in England. If it did, the learned counsel for the defendants would doubtless have established it by some competent evidence. See Poth. Traite de Change, pt. 1, c. 5, arts. 149, 150.

But the principal objection is, that there has been gross negligence in the remittance of the bill, and that this, at all events, would discharge the drawer, and by consequence the present defendants. There is a difference between the case of a bill of exchange, drawn payable at so many days after date, and one drawn payable at so many days after sight. In the former case, the bill must be presented by the period of its maturity; in the latter, it is sufficient if it be presented in a reasonable time. What that reasonable time is, depends

upon the circumstances of each particular case, and no definite rule has as yet been laid down, or indeed can be laid down to govern all cases. The question is a question of fact for the jury, and not of law for the abstract decision of the court. Such, as I take it, is the doctrine of the authorities. There is one other limitation, or rather illustration, of the principle, which is very material. It is this, that the holder is not at liberty to lock up the bill for any length of time in his own possession; but he may put it into circulation, and though it may remain a considerable time in circulation, if there be no unreasonable delay in any of the successive holders, the delay of presentment for acceptance is not fatal to the party in case of a dishonor. Muilman v. D'Eguino, 2 H. Bl. 565; Goupy v. Harden, 7 Taunt. 159; Fry v. Hill, Id. 397; Field v. Nickerson, 13 Mass. 131; Kyd, Bills, 117; Bayley, Bills & N. (2d Ed.) 60; Chit. Bills, (5th Ed.) 208. In the present case the bill was not put into circulation, but was locked up in the hands of the agent of the plaintiff at Boston, from the 6th of July to the 29th of September. It has been said, that the plaintiff was bound to send it direct from Havana to England by some regular conveyance, and had no right to remit it to Boston for sale. I am of a different opinion. The party, who receives a negotiable bill, payable after sight, has a right to sell it in the market, where he resides, or to send it to any other place for sale. He is not bound personally to make a remittance of it, or to send it directly to the country on which it is drawn. He is at full liberty to put it in circulation, or to send it to any other place for sale or remittance; and the only limitation upon this right is, that he shall have it presented within a reasonable time, be the conveyance direct or indirect. To be sure, the usage of trade is to be consulted on this as on other occasions. The holder of such a bill is not at liberty to send it to very remote places, wholly out of the course of trade, if there be unreasonable delay thereby in the presentment for acceptance, and thus to fix the drawer with an indefinite responsibility. But on the other hand, the transmission in a direct trade is not necessary. No one can doubt, that, by the course of trade, many bills of exchange, drawn in the Havana on England, are sent to the United States for remittance or sale. The very testimony in this case establishes this fact. It would be a most inconvenient rule to hold, that such a negotiation of bills was at the sole peril of the holder. I know of no rule of law reaching to such extent. In my judgment, the remittance of the bill to Boston for sale was not a discharge of the defendants.

Then as to the delay. The jury must, independent of the asserted agreement, look to all the circumstances. If the bill had been presented before the 19th of August, when the funds reached Williams, it would have been protested for non-acceptance. That it was in the contemplation of all the parties, that the bill should or might be retarded, so as not to reach the drawee before the fund, is most manifest from all the circumstances of the case. The whole arrangement proceeded upon this as an implied basis: for otherwise, in case the bill were sold, it would be returned by the holder, with heavy damages against the prior parties, since his right of action would be complete by the dishonour, and he would not be obliged to wait for the funds. Now the bill itself would not have been paid, if it had been presented later than the 21st of August, for it would not have arrived at maturity, if presented at a later period, before Williams's failure, which was on the 24th of October. In reality, then, there were but two days for the presentment of the bill, in which acceptance and payment would have followed each other. The loss, therefore, which has been sustained, cannot have arisen from any want of due presentment, unless there was an unreasonable delay in not remitting the bill before the 21st of August. The evidence establishes the usual average time of remitting bills from Havana to London, by common conveyances, to be about fifty days; and calculating this to be the earliest period for remittance, where there is no delay, the bill, if sent on its passage on the 20th of June would not have reached London sooner than the 10th of August; and supposing the remittance to Boston justifiable, not until the 25th of August. In this view there can scarcely arise the least doubt, that there was no delay in not remitting the bill until after the funds reached London. The plaintiff, having sent the bill to Boston for sale, had a right to some time to look out for a purchaser; and in the uncertainty of the time when the funds might be expected to reach London, he ought to be allowed, for the benefit of all concerned, a liberal indulgence as to his calculations of time. The only real difficulty is, whether the subsequent delay to the 29th of September was not an unreasonable time, not because it actually occasioned the loss, but because it was a giving credit to the drawee, and thereby putting the bill at the risk of the plaintiff, as to the solvency of the drawee. In coming to a conclusion upon this point, the jury will weigh the whole evidence, and take into consideration the course of trade, and the understanding of the parties in this particular case. If there has been any act of the defendants, or their agent, adopting the delay, or recognizing their responsibility with full knowledge of the delay, that would be decisive of itself. But in the absence of such evidence, it will still be for them to say, whether the delay be, upon all the circumstances, unreasonable.

Hitherto I have considered the case as if it were governed by the rules of the common law; but as I have before observed, the case arose in Cuba, and in this, as in other respects, it must be governed by the Spanish law. It has been treated, however, as a question not varied by any thing peculiar to the

law of Spain, and therefore the court has given its opinion accordingly. It is most probable, that the Spanish law is quite as indulgent, if not more so than ours, to the rights of the holder. See Poth. Traite du Contract de Change, pt. 1, art. 143, c. 5, § 2; Locré's Esprit du Code de Commerce, tom. 2, p. 242; Code de Commerce, lib. 1, tit. 8, § 11, art. 160, &c.

If there was any special agreement in the case, beyond what the other facts would naturally imply, it will, of course, be conclusive upon the point now under consideration. The testimony is in conflict, and it will be for the jury to decide upon the credit to which it is entitled. (Here the judge summed the facts, as to the agreement, at large; and left them to the jury.)

The jury disagreed on the question of facts, and by consent were discharged.

[Subsequently the cause was again tried by the jury, with additional evidence. The verdict was rendered in favor of the plaintiff. See Case No. 17,097.]