Taylor v. Sip.

---

TAYLOR AND THOMSON v. TUNIS SIP.

1. The general rule is, that the holder of a check is bound to present it for payment in a reasonable time, and if not paid, to give notice thereof to the drawer in a like reasonable time. What is reasonable time will depend upon circumstances.
2. What considered reasonable time in the case of a check post dated, and deposited for collection upon the day of its date.
3. A check post dated must be considered as issued the day it bears date. —*Per* WHELPLEY, Ch. Just.

The action is brought on a check on the Cataract City Bank, drawn in Paterson by Tunis Sip, to the order of the plaintiffs, for $341.95. It was for merchandise bought on the 24th October, 1860, and was given on that day, but post dated 24th of November following. The check not being paid by the bank, plaintiffs brought this suit to recover the amount. On the trial at the Morris Circuit before the Chief Justice, a verdict was taken for the plaintiffs, subject to the opinion of the court at bar, on the following case:

This action was brought upon a check, *pro ut* the same, and came on to be tried before the Chief Justice at the Morris Circuit, January 22d, 1861, before a jury, when the plaintiffs proved the execution of the check by the defendant,

Taylor v. Sip.

and the endorsements thereon, that the same was deposited in the Hackettstown Bank a few days before it is dated, and discounted by the bank for plaintiffs, having been drawn on the 24th October, 1860, at Paterson, and delivered to the plaintiffs there in payment for goods sold and delivered, and post dated on the 24th November, 1860 ; that on the evening of the 24th November, the Hackettstown Bank, by its cashier, placed the same in a package with twelve other checks, and enclosed them in a letter, dated the 26th November, and the same day (26th November) placed the said letter containing those checks in the post-office at Hackettstown, Saturday, the 24th, or Monday, the 26th, directed to the Newark Banking Company, Newark; that the said package was received by the cashier of said last named bank, for the first time, in the said Newark Banking Company's office during business hours of the 27th, and receipt thereof acknowledged on that day, and forwarded to the Mechanics and Traders Bank in Jersey City on the 28th, and that on the morning of the 1st December, the president of the Cataract City Bank found the said check in his bank in the morning, at the opening of the bank, in the Mechanics and Traders Bank packages received by mail, and during the day, about three o'clock, handed the same to a notary to present for payment; that the same was presented, by said notary, to the president at said Cataract City Bank for payment, payment required, and the check protested for non-payment, and due notice thereof given ; that the Cataract City Bank kept an account with the Mechanics and Traders Bank of Jersey City, and settled twice a week, on Tuesdays and Fridays; that the said Cataract City Bank paid all checks presented at its counter on the 1st December, but none sent from other banks by mail; that the said check was sent from the Hackettstown Bank to the Cataract City Bank through the ordinary channels used for the collection of such papers; that the Cataract City Bank did not credit the Mechanics and Traders Bank at Jersey City with the said check in the ordinary course of business, because its officers then believed that

unless their bank received aid that day, it would be compelled to stop.

Thursday, the 29th November, was thanksgiving day.

The sale and delivery of the goods mentioned in the bill of particulars admitted by defendant.

It was proved that the check would have been paid if presented at any time prior to the 1st December, on or after 24th November.

There was a morning and evening mail from Hackettstown to Newark, closing at six and a half A. M. and one and a half P. M.

A morning and evening mail from Newark to Jersey City, and the same from Jersey City to Paterson.

The Cataract City Bank did no business after the 1st December, and went into the hands of receivers.

The defendant's account was good to pay the check from the 24th November to the 1st December, inclusive.

The check was given in pursuance of an arrangement which existed between the parties, that defendant should have thirty days' credit on goods sold by plaintiffs to him, and should give his check to them, post dated thirty days as in the present instance.

Plaintiffs and defendant believed the Cataract City Bank to be in good credit until after the 1st December, and had no reason to believe otherwise.

JACOB VANATTA, *Att'y of Plaintiffs.*
JOHN HOPPER, *Att'y of Defendants.*

On the coming in of the *postea,* it was moved that judgment be entered on the verdict.

For the plaintiffs, *J. Vanatta.*

1. This is an action between the original parties to the check.

The plaintiffs lived and did business at Washington, Warren county.

The defendant resided, and did business in the city of Paterson.

The check was made and issued nearly thirty days *before its date.*

2. Although post dated, it is to be treated as if issued on the day it bears date. *Story on P. Notes,* § 490, and *notes; Mohawk Bank* v. *Broderick,* 10 *Wend.* 304.

3. Checks are to be treated and regulated as inland bills of exchange. *Per* KENT, Judge, in *Cruger* v. *Armstrong,* 3 *Johns. Cases* 5; *Smith* v. *Jones,* 20 *Wend.* 192.

4. To charge *the drawer,* the general rule is, that the holder, in case of dishonor, is bound to present the same for payment within *a reasonable time. Chitty on Bills* 380; *Conroy* v. *Warner,* 3 *Johns. Cases* 259.

5. What is "*a reasonable time,*" is a question of law, and is dependent upon the circumstances of each case. 3 *Johns. Cases* 259; *Chitty on Bills* 280; *Ibid.* 285, *note* 1; *Ibid.* 513, and *note* 2; *Story on Bills,* § 470, 473, 475.

Here, treating the check as issued on the day it bears date, and as then delivered to the plaintiffs at their place of business, the ordinary means of collection were employed, and hence due diligence was exercised.

For the defendant, *J. Hopper.*

CHIEF JUSTICE. At the circuit the plaintiffs had a verdict for the amount of the check sued upon, subject to the opinion of the court upon a case stated, agreed upon by the parties.

The point presented for decision is, whether the check was presented for payment at the bank upon which it was drawn in due time, so as to exonerate the holder from *laches,* and throw the loss occasioned by the failure of the bank before presentation upon the drawer. The plaintiffs resided and did business at Hackettstown, in Warren county, and sold the goods, for which the check was intended to pay, to the defendant at Paterson, he residing and doing business

there, and the drawer being cognizant of that fact. The check was given at the time the goods were sold, upon the 24th October, at Paterson, in pursuance of an arrangement between the parties, that defendant should have thirty days' credit on goods sold by plaintiffs to him, and should give his check to the plaintiffs post dated thirty days, as in the present instance. The check bore date on the 24th November, and came to the Cataract City Bank upon the 18th December, upon which day the bank failed, refusing to pay all checks received by mail, although it paid on that day all checks presented at its counter. The next day it stopped payment on all demands, and has since been insolvent.

Although the plaintiffs received the check on the 24th October, they did not put it in circulation, or in course of transmission for presentation until a few days of the 24th November, when they had it discounted at the Hackettstown Bank. On the evening of the 24th November, the cashier of the bank enclosed it, with other checks, in a letter directed to the Newark Banking Company, and put the letter in the office on Saturday, the 24th, or Monday, the 26th. It was received by the Newark Bank, in business hours, on the 27th, sent by that bank to the Mechanics and Traders Bank, in Jersey City, on the 28th. On the morning of the 1st December, it was found in the Cataract City Bank, in the package received from the Mechanics and Traders Bank. The 29th November was thanksgiving day, appointed by the governor.

This was the usual route by which checks on Paterson, put in the Hackettstown Bank, were collected.

A check is an instrument *sui generis*, in some respects resembling, and in others differing from an inland bill of exchange.

Ordinarily the drawer of a check is the principal debtor, and the presumption is that it was drawn to pay a debt due by the drawer upon a bank or cashier having the funds of the drawer upon deposit subject to be appropriated to the use of the drawer. The drawing of a check is considered an

Taylor v. Sip.

appropriation of so much of the drawer's funds to its payment. By it, the drawer is under obligation to leave so much of his funds in the drawer's hands, to await the presentation of the check; and if he does so, and there is unreasonable delay in the presentation of the check, and the drawer suffers loss in consequence thereof, as by the failure of the drawee before presentation, the loss will fall upon the holder of the check, if it would have been paid if presented in due time. No days of grace are allowed upon it. It is payable as soon as drawn, unless payable at a future day by its terms or post dated. It is not presentable for acceptance, but for immediate payment. When post dated, it is not presentable for payment until the day of its date. When payable at a future day, it is payable on that day or after. The drawer is not discharged for failure to present it when due, unless he has sustained damage, and then only *pro tanto ;* but he cannot be called upon to pay it, until after demand of payment had been made upon the drawer, and payment refused, and notice given to him of nonpayment, unless a sufficient excuse be shown for not doing it. This previous presentment to the drawee, and demand of payment and notice of nonpayment to the drawer, is not for the purpose of fixing the drawer, as in case of the drawer of a bill, or endorser of a note, but as a prerequisite to the bringing of an action. The payee having accepted the check as payment, is thereby under obligation to call upon the drawee and demand payment, and give the drawer notice of dishonor before he can sue him.

The payee of a check, in order to avoid responsibility for the failure of the drawee, if he resides in the same place where the drawee and drawer reside, and receives it there, should present it for payment upon the next day after he received it within business hours, if payable when he received it, unless the circumstances under which it was issued and the purpose for which the drawer drew it, and knew it was to be used, show that it was not intended to be so presented.

The general rule is, that the holder is bound to present it for payment in a reasonable time, and to give notice thereof to the drawer, in a like reasonable time. What is a reasonable time will depend upon circumstances, and will in many cases depend upon the time, the mode, and the place of receiving the check, and upon the relation of the parties between whom the question arises. If the check is drawn for the purpose of being negotiated at a distant place, that circumstance is also to be considered, and it is to be presented as promptly as the purpose for which it was issued will permit, having regard to the usual course of business and banking, in transmitting such checks to their place of payment. These rules will be found to be fully sustained by the cases and approved text writers. *Story on Prom. Notes, title Check; Parsons on Notes and Bills, tit. Check; Ed. on Bills and Notes* 398, 397; *Chitty on Bills* 546; *In re Brown,* 2 *Story* 502.

Where a check is issued for the benefit of the payee, by the drawer, and post dated to the time when the drawer's debt becomes due, to enable the payee to use it in a distant place from that where it is payable, it is to be considered, for the purposes of presentment, as if issued on the day it bears date, and is payable at sight on or after the day it bears date. *Mohawk Bank* v. *Broderick,* 10 *Wend.* 304; 13 *Wend.* 134, *S. C. in Error.*

The check was in the hands of the Hackettstown Bank on the day of its date, the 24th December, which had received it before that time, and discounted it for the use of the plaintiffs. Story, in his work on *Notes,* §.493, lays down the rule as to presentment of a check drawn at a place distant from its place of payment, as follows: The holder is bound to forward it by post to some person at the latter place on the next secular day after it is received; and the person to whom it is forwarded will not be bound to present it for payment, until the day after it has reached him by course of post.

*Parsons on Notes and Bills,* § 73, says: Where the drawer, drawee, and payee of a check live in the same place, the payee

Taylor v. Sip.

has still a day for his presentment; but if it is drawn on a distant place, it has been held, in England, that the payee has until the next secular day to forward it, and his agent has till the day of the receiving it for presentment and demand. For this he cites *Smith* v. *Janes*, 20 *Wend*. 192; *Moule* v. *Brown*, 4 *Bing. N. C.* 266; *Rickford* v. *Ridge*, 2 *Campb*. 537.

Nor need the check be sent direct to its place of payment by the holder. It may be sent by the usual and accustomed channel of transmission. If it belong to a bank, or be left with it for collection, and the bank does not exchange directly with the bank upon which it is drawn, it may be sent to a bank with which it does exchange, and so to its correspondent bank, until it reaches the bank at which it is payable, if the route be not unreasonably circuitous. Such is the well settled usage among banks, and it is sanctioned by law. Such is the rule in regard to the transmission of bills of exchange, and it seems equally applicable to checks. Any other rule would be exceedingly onerous to the holders of checks. *Wallace* v. *Agry et al.*, 4 *Mason* 336; *S. C.*, 5 *Ibid.* 118; *Smith* v. *Janes*, 20 *Wend*. 193.

The check was dated the 24th November. The 25th was Saturday. It was transmitted on the 26th by the mail of that day, which left at one and a half o'clock P. M., received by the Newark Banking Company on the 27th November, sent by it to the Mechanics and Traders Bank on the 28th, and would, in due course of mail, be received on the 29th, but that was thanksgiving day. That bank had until the 30th to transmit it to the Cataract City Bank. It was received there on the 1st December, as it was found in the bank on the morning of that day. The case expressly states that the check was sent by the ordinary channel used for the collection of such paper.

As the check was to be considered as if issued on the day it bore date, and as it was transmitted by the usual channel for collection, in strict accordance with the rule giving a day to each collecting agent, I think the holder of the check was

not guilty of negligence, and that the drawer of the check, the same having been duly presented for payment, and due notice of non-payment given to him, is liable for the amount of the check, and that there should be judgment on the verdict.

OGDEN, J. The action is founded on a check, drawn by the defendant in favor of the order of the plaintiffs, for $341.95, in Paterson, on the 24th of October, 1860, given in payment of merchandise purchased on that day, but post dated on the 24th of November following. It was payable at the Cataract City Bank at Paterson. The plaintiffs resided in Washington, Warren county. The defendant, a resident in Paterson, provided funds in the Cataract City Bank to meet the check before the 24th of November, and had them on deposit for that purpose when the bank failed, on the first of December. The check did not reach the bank until the 1st of December, when payment was demanded and refused, and due notice of dishonor given to the defendant. The Cataract City Bank shortly afterwards went into the hands of a receiver, and the depositors have sustained total loss. The question presented to this court is, whether the payees or their endorsee used such a degree of diligence in presenting the check for payment as entitles them to recover the money from the maker. The check bears date, and was payable, on Saturday, the 24th of November, but it was not presented at the bank for payment until Saturday, December 1st.

What is due diligence in presenting a post dated check for payment? It was conceded, on the argument, that checks post dated are not entitled to days of grace. Although this check was payable on the day of its date, and if payment had been refused by the bank on that day it would have been lawfully protested, yet the holders were not bound to make the demand on that day, mercantile usage having given them at least the next business day to present it at the counter for payment. *Brown's case*, 2 *Story* 502.

The question raised in this case is, what length of time the

holders had to forward the check to the bank on which drawn, so as to hold the maker on non-payment? It is impossible to lay down an inflexible rule which should govern all cases of checks. Justice Marcy said, in the case of the *Merchants Bank* v. *Spicer*, 6 *Wend.* 445, that checks are considered as having the character of inland bills of exchange, and the holder thereof, if he would preserve his right to resort to the drawer or endorsers, must use the same diligence in presenting them for payment, and giving notice of default of the drawee, that would be required of him as the holder of an inland bill. I think that this is stricter law than is required for the decision of this case; because an inland bill must be presented for payment on the day it becomes payable. What shall be deemed a reasonable time, must in some measure depend on the circumstances of each particular case. The court say, in *Murray* v. *Judith*, 6 *Cowen* 490, "as a general rule, a check is not due from the drawer until payment has been demanded from the drawee, and refused by him. As between the holder and an endorser, payment must be demanded within a reasonable time; but as between the holder and the maker a demand at any time before suit is sufficient, unless it appears that the drawee has failed, or the drawer, in some other manner, has sustained injury by the delay." Chancellor Kent held, "If the drawer of a check suffers by the delay, as by intermediate failure of the drawee, he may complain of delay unreasonably protracted. If the holder unreasonably delays, he assumes the risk of the drawee's failure, and may, under the circumstances, be deemed to have made the check his own, to the discharge of the drawer. What then is unreasonable delay?" If a person in Detroit should to-day make a check upon a bank in the city of New York, it would not be required of the payee, in order to hold the maker, that he should have the check presented for payment until it could be forwarded and received in the city by due course of mails; and if the bank failed during that interval of time, and payment should on that account be refused, the drawer would be liable to pay the money, because no ordinary

diligence would have procured an earlier demand. The distance from Hackettstown to Jersey City is about fifty miles, and the case shows that two mails passed daily between those places. The distance from Jersey City to Paterson is about seventeen miles, and it appeared that two mails were made up and sent daily between those places. The plaintiffs became possessed of the check thirty-one days before the day of its date, and the Hackettstown Bank passed the net proceeds of the discount of it to the credit of the plaintiffs several days before the check was payable, and no satisfactory reason has been shown why payment was not demanded at an earlier day. The counsel of the plaintiffs insisted, that the bank employed their usual mode of forwarding their receivables to the eastern part of the state through their correspondents in Newark, and hence that no *laches* is imputable to them for not having the check at the counter of the bank in Paterson at an earlier day. I do not think that the drawer of the check is answerable for the consequences of delay, resulting from the mode which the Hackettstown Bank chose to adopt for collecting checks on other banks. If a week was required for transmitting a check to Paterson, the bank should have forwarded it to Newark before it was payable, so that it could have reached the drawee within a reasonable time. I know of no mercantile rule which required them to hold it in their office until it became payable. If it had a legal existence for discount before the date, it had the same existence for transmission for collection. It was sent from Hackettstown, on Monday, 26th, by a mail which would have carried it to Paterson by Tuesday afternoon, but it did not reach the bank until the following Saturday. It is true that Thursday was a public holiday, but the mails were carried regularly on that day, and there was no public necessity that the check should be held *in transitu* for twenty-four hours in an intermediate bank, to the loss and damage of the defendant to the amount of the check, if he should be held liable in this action. The check would have been paid by the bank if it had been presented on or after the 24th of

November, and before Saturday, the 1st of December. Delay in presenting a check for payment will not authorize the maker to withdraw from the bank, or otherwise appropriate the funds which the fact of drawing the check assumes that he has devoted for its payment. If a check is not paid in many days or weeks after it bears date, a loss of interest by the holder is all the damage which can result to any person from an unreasonable delay in procuring payment. But if a loss is to be sustained from the failure of the drawee, while the funds are on deposit, and some time after a check was payable, some party connected with it must sustain the damage. The question then arises, upon whom shall the loss fall, the party who fulfilled his contract by providing the funds at the place designated in the check, and appropriated them to the payment of it, or the party who failed to call for his money within a reasonable time after it became due?

The delay was attempted to be excused under the rule which has been established for regulating the transmission of notices of protest from one endorser of a dishonored note or bill to another. That rule allows to each one day for advising a prior endorser.

But I do not see such analogy between the cases as can sanction the delay which attended the presentment of the check in suit for payment. The right of the drawer of a check to be absolved from liability, when a loss occurs from the subsequent insolvency of the bank drawn upon, should not be made to depend upon the mode which the holder of it may adopt for obtaining his money at the counter. In all cases, a check should be presented for payment within a reasonable time. In the case of the *Mohawk Bank* v. *Broderick*, first reported in 10 and afterwards in 13 *Wendell*, the endorsers of a post dated check were prosecuted. A special verdict showed that the maker of the check had no funds in the bank at Albany, on which it was drawn, on the day of the date of the check, or any time afterwards; that on the day of the date the check was deposited in the

Mohawk Bank, and entered as cash to the credit of the depositors; that the bank did not send it forward until twenty days had expired, becauses they made exchanges with the bank in Albany only once in three weeks, and that during the time the drawer had failed. Although he had not provided funds in the bank to meet the check, yet as he had failed, and an earlier demand might have saved the loss of the amount of the check, the Court of Errors in New York unanimously decided, that the holders of the check were chargeable with gross negligence in presenting the check for payment. In the present case the circumstances show that the loss resulted from the delay which occurred in forwarding the check, and that the holders did not exercise reasonable diligence in seeking to obtain payment from the bank.

VAN DYKE, J. The plaintiffs sue the defendant on a check, given by him to them for $341.95, on the Cataract Bank at Paterson. The check was in fact drawn and delivered to the plaintiffs on the 24th day of October, 1860, thirty-one days later. It was presentable for payment at the bank on the day of its date, and not before. On the day when the check was so presentable, the defendant, as the drawee, had the money in the bank to pay it, and continued to keep it there for six days thereafter, but the check was not presented at the bank until the seventh day after its date, on which day the bank failed. The check was not paid, and the money was lost. Now here was great negligence somewhere, and the party who has been guilty of it should be the loser. It could not have been the defendant, for he met every obligation which rested upon him. He had his money at the bank on the day the check was first presentable for payment, and continued it there for several days thereafter; and the evidence is that it would have been paid, if presented, on any day between the 23d of November and the 1st of December following.

If the check had been drawn at a far distant point, and

had been dated and made presentable on the day on which it was drawn, the necessary and usual time for its transmission to the place of payment would have been allowed; but that rule has no application at all here, for in this case the check was actually drawn and delivered at Paterson, within call of the bank where it was made payable; and there is no reason whatever, except the mere will of the holders, why it might not have been deposited in the bank on that same day for payment when it came due. And then, besides this, the plaintiffs had thirty days longer within which to carry or send this check to the bank for payment; and when, at the end of six days later, they still had not the check at the bank for payment, and by means of which the money deposited to pay it became lost, it seems impossible to avoid the conclusion that the negligence and want of due diligence were gross, and that they were wholly on the part of the plaintiffs.

It is a matter of no importance where the check was between the time when it was drawn and the time when it reached the bank, as no reason is furnished why it might not have been presented in due time. Neither the plaintiffs, nor any other person in whose hands they may have placed the check, had any justification for retaining it until it was too late for it to reach its destination in due time, and then set up that they had used the ordinary channels of transmission. The agents employed were the agents of the plaintiffs, and their failures in duty were the failures of the plaintiffs.

The check seems to have been placed in the Hackettstown Bank a few days before its date, and was there discounted; but this can make no difference to the defendant. If the default was theirs, it may be that the plaintiffs were not bound to take it up; but they seem to have done so, and now claim it as their own, and have brought their action upon it; and they must in this suit bear the responsibility of all the delinquencies that have occurred.

The ordinary rules of commercial and mercantile law which

Taylor v. Sip.

apply to commercial paper, are not applicable to this case. If the defendant had withdrawn his money from the bank on the second or third day after the check was payable, and had then denied his liability upon it on the ground that it had not been presented in due time, the question would have been determined by their rules; but when the drawer of a check in good faith and in due time, places his money in the bank for the purpose of its payment, and does not withdraw it all, but keeps it there for a week, that the holder may call or send and get it, and on his failure to do so, the money, in consequence, is lost by the failure of the bank, the question must be determined by the ordinary rules of law and justice. These, I think, require that this defendant should now be exempt from the payment of this check.

*Verdict set aside.*